# Illinois Official Reports

## Appellate Court

*People v. Faulkner*, 2017 IL App (1st) 132884

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DORIAN FAULKNER, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-13-2884 |
| Filed<br>Rehearing denied | February 10, 2017<br>March 28, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 04-CR-24639; the Hon. Thomas V. Gainer, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Maria A. Harrigan, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and John E. Nowak, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.<br>Justices Connors and Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1 Following a bench trial, the circuit court of Cook County found defendant Dorian Faulkner guilty of one count of being an armed habitual criminal (AHC) and two counts of unlawful use or possession of a weapon by a felon (UUWF) and sentenced him to six years of imprisonment. On direct appeal, he argues that (1) his AHC conviction should be reversed because it was predicated on a prior conviction for aggravated unlawful use of a weapon (AUUW) that was based on a statute found to be unconstitutional and void by *People v. Aguilar*, 2013 IL 112116, and (2) his AHC and UUWF convictions should be reversed because the State failed to prove beyond a reasonable doubt that he had constructive possession of the firearm and ammunition recovered by the police. On August 31, 2015, we issued an opinion affirming the UUWF convictions but reversing the AHC conviction. *People v. Faulkner*, 2015 IL App (1st) 132884. In September 2016, our supreme court issued a supervisory order directing us to reconsider that judgment in light of its decision in *People v. McFadden*, 2016 IL 117424. We now affirm the convictions for both AHC as well as UUWF.

¶ 2                                    BACKGROUND

¶ 3 On July 14, 2012, Chicago police officers conducted a compliance check on the defendant, who was released on parole[1] for an unrelated crime. At the defendant's residence at 5210 South Morgan Street, the police recovered a .223-caliber assault rifle and ammunition from the attic, after which they arrested the defendant. On July 26, 2012, the defendant was charged with one count of being an AHC (count I) and two counts of UUWF (counts II and III). The AHC charge was predicated upon his two prior convictions for AUUW under case No. 08 CR 0981001 and manufacture/delivery of a controlled substance under case No. 09 CR 0948301.

¶ 4 On July 16, 2013, a bench trial commenced, during which the State presented two witnesses. Parole Officer Jack Tweedle testified that at about 8:30 a.m. on July 14, 2012, he and Officer Jim Hollenback, with the assistance of four other officers, conducted a parole compliance check at the defendant's residence. He described the residence as a two-story, single-family home. Officer Tweedle testified that the purpose of the compliance check was to verify that the defendant was complying with the conditions of his parole contract. The officers knocked on the door multiple times, and the defendant took about five minutes to answer it. The defendant was alone at the time he answered the door. After entering the residence, Officer Tweedle found about three grams of cannabis in plain view on a coffee table in the living room. During the compliance check, the defendant remained in the living room with Officer Hollenback. Officer Tweedle described the layout of the residence as having a small hallway leading from the front door to the living room area, a bedroom, a kitchen, and an entry leading to an enclosed back porch from the rear of the kitchen. Stairs led to the attic via an enclosed back porch. Neither the entry leading to the enclosed back porch nor the attic had a door. Officer Tweedle went upstairs and walked through the entire attic, where he found a loaded .223-caliber assault rifle. A box of .223-caliber bullets was also found. Officer Tweedle

_____

[1]The defendant was paroled on the unrelated crime on April 17, 2012. The evidence shows that as a condition of his release, he was prohibited from possessing a firearm or other dangerous weapons, and was subject to the search of his person, property and residence.

testified that nothing obscured his view of the rifle. The police officers confiscated the assault rifle and the box of ammunition.

¶ 5 Officer Cary Pozulp[2] testified that he assisted Officer Tweedle with the parole compliance check. He stated that the officers entered the first floor of the South Morgan Street residence after climbing a flight of exterior stairs. There was a flight of stairs leading from the first-floor unit to the attic, which could be accessed by a "closed dwelling" through the kitchen. There were no locks or doors barring entry from the first floor into the attic. Officer Pozulp met Officer Tweedle in the attic, where he recovered a .223-caliber assault rifle near the entrance of the attic. Officer Pozulp did not have to move anything to see the assault rifle, which was only partially covered by a wooden board. The assault rifle was loaded with one round in the chamber and had over 40 live rounds in the magazine. Officer Tweedle then alerted Officer Pozulp to a nearby box of .223-caliber ammunition, which contained an additional 43 rounds of ammunition. Officer Pozulp testified that, aside from the defendant and the police officers, no one else was present in the first-floor unit or in the attic at the time of the compliance check. He stated that the officers also recovered about three bags of cannabis from the living room. The defendant was read his *Miranda* rights and taken into police custody. At the police station, Officer Pozulp and Sergeant Dedore interviewed the defendant. When Officer Pozulp asked the defendant about the assault rifle, he replied that "the hood's crazy, we're at war with these GDs out here," and that "I'm not worried about that, and my lawyer will handle this." On cross-examination, Officer Pozulp noted that, during police interrogation, the defendant neither stated that the assault rifle belonged to him nor that it was used "for protection." However, Officer Pozulp answered affirmatively when defense counsel asked whether the defendant had told the police to "go ahead and charge me with that gun. My lawyer got this."

¶ 6 At the close of the State's case-in-chief, the State, without objection from the defense, entered into evidence certified copies of the defendant's prior felony convictions for AUUW (case No. 08 CR 0981001) and manufacture/delivery of a controlled substance (case No. 09 CR 0948301). These two prior felony convictions were offered as proof of the requisite predicate offenses supporting the defendant's AHC charge. After the State rested, the trial court denied a defense motion for a directed finding.

¶ 7 Patricia Faulkner (Patricia) testified as the sole witness for the defense. She testified that the defendant is her great-nephew and that she had lived at the 5210 South Morgan Street residence since about 1980. Patricia stated that her siblings, Loretta Faulkner (Loretta) and Willie Faulkner (Willie), owned the building. Patricia lived in the basement, while the defendant lived in the first-floor unit. The attic was accessible from the enclosed back porch stairs of the first-floor unit, and the back porch could be accessed from the backyard. She stated that before the defendant moved into the residence in April 2012, other family members brought furniture and items into the apartment and also "tried to clear some things out to make the space better for him." Some items in the attic were there before the defendant moved into the residence. Much of the furniture inside the first-floor unit belonged to other family members. Patricia testified that there were three copies of the key to the residence, which were held by her and her siblings, Loretta and Willie. Loretta's key, however, was not "cut properly" and she no longer possessed it. At trial, Patricia also identified numerous bills and mailings that were addressed to different family members at the 5210 South Morgan Street location. She

---

[2]It is unclear whether Officer Pozulp's first name is spelled correctly in the transcript.

testified that she did not see the defendant bring a gun into the home in April 2012, nor did he ever tell her that he had a gun. She also never observed anyone else bring a gun into the home between April 2012 and July 2012. On cross-examination, Patricia stated that, at the time the defendant lived in the home, there was no door separating the attic stairs from the attic. However, the door separating the enclosed back porch from the backyard had a lock on it. Both she and the defendant had physical access to the attic. Before the defendant moved in, other family members had lived there from time to time, but the defendant was the only person living in the first-floor unit at the time of his arrest in the instant case. Patricia stated that she was not aware that there was a .223-caliber assault rifle and ammunition in the attic. In order to access the attic from the basement unit where Patricia lived, she would have had to walk through the laundry room next to her apartment and walk up the back stairs.

¶ 8        Following closing arguments, the trial court found the defendant guilty of all charges—one count of AHC and two counts of UUWF:

> "Okay. Yes, this is a case of [ ] constructive possession, and, yes, other people had access to this building, according to the testimony of [Patricia], before the [d]efendant moved in. There is evidence from [Patricia] that people were bringing things into that [first-floor] unit *** to make the place habitable for the [d]efendant when he was paroled in April of 2012.

> There is also evidence that the [d]efendant's grandfather, who is [Patricia]'s brother, had a key. [Patricia] had a key, and [Patricia's] sister, apparently, had a key at some point, but that key didn't work anymore—it wasn't cut right—and it didn't work.

> There are—there's access to the attic from the floor that the [d]efendant was living on; there's access to *** the attic from [Patricia's] apartment. [Patricia] testified that she had no idea that the gun was up there, so it clearly wasn't her gun, even though she had access to *** the attic.

> I would note, for the record, that [Patricia] had a tremendous amount of difficulty walking in and out of the courtroom. She was aided by a cart that is on wheels that also has a seat which she sat in when she testified. She did not take the two or three steps up to the witness stand, and I asked her to do that only because I thought it would be more convenient for her.

> In any event, even if she could access the attic herself, in her condition, she clearly said it wasn't her gun, though she had no idea it was up there.

> The fact that her brother, the [d]efendant's grandfather, had access doesn't mean he was up there. We need to look at what was up there. This is a very dangerous weapon that was locked and loaded and ready to go.

> Now, that alone would not be enough to prove that this [d]efendant, beyond a reasonable doubt, possessed that weapon. But when you combine the fact that this thing was up there, locked and loaded and ready to go, with the statement—and I believe the police officers because if the police officers were making this up, the statement from the police officers would have been, he admitted that that was his weapon, he kept it up there for protection.

> But that's not what [Officer] Pozulp said. He said, this—the hood is crazy, we're at war with these GDs. Which is tantamount to saying, I need this thing for my protection.

- 4 -

I believe the police officers, I believe that the State has proven that this [d]efendant possessed that weapon beyond a reasonable doubt. There is a finding of guilty on all charges."

¶ 9 On August 27, 2013, the trial court denied the defendant's motion for a new trial and sentenced him to six years of imprisonment.[3] On that same day, the defendant filed a timely notice of appeal. In that appeal, the defendant challenged whether the State established the necessary predicate offenses to support the AHC conviction beyond a reasonable doubt. The basis of that argument was that his AHC conviction had been predicated, in part, on a prior 2008 conviction for AUUW for violating a statutory provision subsequently found to be unconstitutional. See *People v. Aguilar*, 2013 IL 112116 (concluding that the Class 4 version of the AUUW statute (720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (d) (West 2008)) violated the right to bear arms under the second amendment of the United States Constitution). In turn, he argued that the 2008 AUUW conviction was void and thus could not serve as one of the two predicate convictions necessary to support the AHC offense.[4] Separately, the defendant's appeal challenged whether the State established beyond a reasonable doubt that the defendant possessed the assault rifle and ammunition that were recovered from the attic by the police.

¶ 10 On August 31, 2015, we issued an opinion in which we agreed with the defendant that, in light of *Aguilar*, the 2008 AUUW conviction could not support the subsequent AHC conviction. We reasoned:

"Because the defendant's prior conviction for AUUW was based on a statute that was found to be unconstitutional and void *ab initio* in *Aguilar*, we cannot allow it to stand as a predicate offense for the defendant's armed habitual criminal conviction in the instant case. Thus, we find that the State was required to, but could not, prove beyond a reasonable doubt an element of the offense of armed habitual criminal, where the statute underlying the AUUW conviction was found to be unconstitutional and, thus, the conviction cannot serve as a predicate offense for any charge." *Faulkner*, 2015 IL App (1st) 132884, ¶ 20.

Separately, our opinion affirmed the defendant's UUWF convictions, as we agreed with the State that it had offered sufficient evidence of the element of possession.

¶ 11 On September 28, 2016, our supreme court entered a supervisory order, directing us to reconsider our judgment in light of *People v. McFadden*, 2016 IL 117424. Our August 31, 2015, opinion was withdrawn in light of the supervisory order. We then allowed the parties to file supplemental briefing with respect to the impact of *McFadden* before issuing this opinion.

¶ 12                                                    ANALYSIS

¶ 13 We note that we have jurisdiction because the defendant filed a timely notice of appeal.

¶ 14 We now review (1) whether, in light of our supreme court's *McFadden* decision, the State established the predicate offenses necessary to sustain a conviction for the AHC offense and

---

[3]The trial court found that counts II and III merged with count I.

[4] The parties do not dispute that the defendant's prior 2009 felony conviction for manufacture/delivery of a controlled substance (case No. 09 CR 0948301) satisfied one of two qualifying offenses under the AHC statute. Rather, they disagree on whether his 2008 felony conviction for AUUW satisfied the second of the two qualifying offenses under the statute.

- 5 -

(2) whether the State offered sufficient evidence of constructive possession to support the AHC and UUWF convictions.

¶ 15    We first conclude that, in light of our supreme court's judgment in *McFadden*, the defendant's 2008 AUUW conviction could, in fact, serve as a predicate conviction for the AHC conviction.

¶ 16    *McFadden* concerned a direct appeal from a UUWF conviction, based on the defendant's possession of a firearm at a time when he had previously been convicted of AUUW. As in this case, the *McFadden* defendant's prior AUUW conviction was based on the same AUUW statutory provision found to be unconstitutional by our supreme court's decision in *Aguilar*. *McFadden*, 2016 IL 117424, ¶ 1. Similar to the defendant's argument regarding his AHC charge in this case, the defendant in *McFadden* argued that *Aguilar*'s holding prevented the State's use of the prior AUUW conviction to serve as a predicate offense for the UUWF charge. *Id.* ¶ 8.

¶ 17    Our appellate court agreed with the *McFadden* defendant and vacated the defendant's UUWF conviction on the basis of *Aguilar*. *People v. McFadden*, 2014 IL App (1st) 102939. However, our supreme court reversed, reasoning that the defendant's felon status was unaffected by *Aguilar* and that, unless the prior conviction was vacated, the prior felony conviction precluded the defendant from legally possessing a firearm. *McFadden*, 2016 IL 117424, ¶ 31 ("Although *Aguilar* may provide a basis for vacating defendant's prior 2002 AUUW conviction, *Aguilar* did not automatically overturn that judgment of conviction. Thus, at the time defendant committed the UUW by a felon offense, defendant had a judgment of conviction that had not been vacated and that made it unlawful for him to possess firearms.").

¶ 18    Our supreme court in *McFadden* relied largely on the United States Supreme Court's holding "that under a federal felon-in-possession-of-a-firearm statute, a constitutionally infirm prior felony conviction could be used by the government as the predicate felony." *Id.* ¶ 22 (citing *Lewis v. United States*, 445 U.S. 55, 65 (1980)). *McFadden* approvingly cited *Lewis*'s reasoning in holding that an AUUW conviction subject to vacatur under *Aguilar* may still serve as a predicate for a UUWF conviction.

¶ 19    The federal statute at issue in *Lewis* criminalized the possession of a firearm by "any person who has been convicted by a court of the United States or of a State *** of a felony." (Internal quotation marks omitted.) 445 U.S. at 60. The defendant in *Lewis* had a prior felony conviction from a state court case in which he was unrepresented by counsel. *Id.* at 57. The *Lewis* court recognized that a conviction without the benefit of counsel was unconstitutional under the sixth and fourteenth amendments. *Id.* at 59.

¶ 20    Despite the constitutional infirmity of the prior conviction, the United States Supreme Court nonetheless held that the prior felony subjected the defendant to liability under the felon-in-possession statute. The court reasoned that "Nothing on the face of the statute suggests a congressional intent to limit its coverage to persons [whose convictions are not subject to collateral attack]" and that "its plain meaning is that the fact of a felony conviction imposes a firearm disability until the conviction is vacated or the felon is relieved of his disability by some affirmative action." (Internal quotation marks omitted.) *Id.* at 60-61.

¶ 21    The *McFadden* decision recognized that "under *Lewis* and its progeny, the fact of a felony conviction without any intervening vacatur or other affirmative action to nullify the conviction triggers the firearms disability." *McFadden*, 2016 IL 117424, ¶ 24. *McFadden* applied the reasoning from *Lewis* to the UUWF statute, which prohibited possession of a firearm, by any

- 6 -

person " 'if the person has been convicted of a felony under the laws of this State or any other jurisdiction.' " *Id.* ¶ 27 (quoting 720 ILCS 5/24-1.1(a) (West 2008)). The *McFadden* court reasoned that the UUWF statute "requires the State to prove only the defendant's felon status" and did not suggest "any intent to limit the language to only those persons whose prior felon convictions are not later subject to vacatur." *Id.* The *McFadden* court further reasoned that the language of the UUWF statute, as with the federal statute at issue in *Lewis*, was " 'consistent with the common-sense notion that a disability based upon one's status as a convicted felon should cease only when the conviction upon which that status depends has been vacated' " (*id.* ¶ 29 (quoting *Lewis*, 445 U.S. at 61 n.5)), and "it is immaterial whether the predicate conviction 'ultimately might turn out to be invalid for any reason.' " *Id.* (quoting *Lewis*, 445 U.S. at 62). *McFadden* concluded that "The UUW by a felon offense is a status offense, and the General Assembly intended that a defendant must clear his felon status before obtaining a firearm." *Id.*

¶ 22 In his supplemental briefing, the defendant raises two arguments attempting to distinguish *McFadden* from the present case, which concern the use of the same prior AUUW felony as a predicate for the AHC offense. However, we find that our court has previously considered and rejected these arguments in *People v. Perkins*, 2016 IL App (1st) 150889, which found *McFadden* applied to sustain an AHC conviction premised on the same predicate AUUW offense at issue.

¶ 23 First, the defendant contends that the holding of *McFadden* was limited to the UUWF offense and does not apply to support a conviction for AHC based on the form of AUUW invalidated by *Aguilar*. The defendant attempts to distinguish the offenses so as to categorize UUWF as a "status"-based offense but AHC as a "conduct"-based offense. The defendant argues that "[t]he UUWF statute at issue in *McFadden* merely requires proof of the defendant's felony status—based on *any* prior felony—to obtain a conviction." See 720 ILCS 5/24-1.1(a) (West 2014) (prohibiting possession of a firearm by any person "if the person has been convicted of a felony under the laws of this State or any other jurisdiction"). He argues that this "generic 'felon status' principle" was the basis for *McFadden*'s holding "that a prior conviction under an unconstitutional statute could serve as a predicate offense for UUWF."

¶ 24 In contrast, the defendant argues, an AHC conviction requires the State to "present evidence of at least two prior offenses from a carefully-considered list" that "represents the entire universe of criminal behavior that the legislature deemed worthy of a Class X conviction and sentence for ACH." See 720 ILCS 5/24-1.7(a)(1)-(3) (West 2012).[5] Thus, he argues that the AHC statute does not create a "broad sweeping firearm disability" for *any* prior felony conviction, as in the case of the UUWF statute in *McFadden*, or the federal felon-in-possession statute at issue in *Lewis*. In his reply brief, he further attempts to distinguish the UUWF offense

[5]The AHC statute provides, in pertinent part, the following:

"(a) A person commits the offense of being an armed habitual criminal if he or she receives, sells, possesses, or transfers any firearm after having been convicted a total of 2 or more times of any combination of the following offenses:

(1) a forcible felony as defined in Section 2-8 of this Code;

(2) unlawful use of a weapon by a felon; aggravated unlawful use of a weapon; *** or

(3) any violation of the Illinois Controlled Substances Act or the Cannabis Control Act that is punishable as a Class 3 felony or higher." 720 ILCS 5/24-1.7(a) (West 2012).

from the AHC offense by arguing that "AHC is a recidivist offense" and that "invalid prior convictions cannot be used *** to prove the prior-felon element of a recidivist statute." He thus argues that "*Lewis* and *McFadden* are based on findings of legislative intent that do not apply to the AHC statute."

¶ 25 We reject the defendant's attempts to distinguish *McFadden* as inapplicable to the AHC offense. Notably, our court rejected a similar argument in *People v. Perkins*, 2016 IL App (1st) 150889, in which we held, pursuant to our supreme court's decision in *McFadden*, that a prior conviction for the form of AUUW invalidated by *Aguilar* may serve as a predicate for an AHC conviction. In *Perkins*, the defendant asserted that *McFadden*'s reasoning was limited to the offense of UUWF because "UUWF impose[d] a 'status-based disability' that precludes any convicted felon from possessing a firearm" whereas "the offense of armed habitual criminal requires the State to prove that the defendant was convicted of specific enumerated offenses." *Id.* ¶ 6. The *Perkins* defendant thus argued that UUWF imposed a "status-based disability" whereas the AHC conviction "imposes a conduct-based disability *** based on a defendant's commission of specific acts." *Id.* The *Perkins* defendant proceeded to argue that "because the *conduct* of which he was previously convicted—possession of a firearm—was constitutionally protected, it cannot serve as a predicate for his armed habitual criminal conviction." (Emphasis in original.) *Id.*

¶ 26 Our court in *Perkins* rejected this attempt to differentiate the UUWF offense from the AHC offense as "a distinction without a difference." *Id.* ¶ 7. We explained:

"In order to sustain its burden to prove that defendant is an armed habitual criminal, the State need only prove the fact of the prior convictions of enumerated offenses [citations], just as the State need only prove the fact of a prior felony conviction to support a UUWF conviction. Nothing in the armed habitual criminal statute requires a court to examine a defendant's underlying conduct in commission of the enumerated offenses in order to find that the State has sustained its burden of proof. And because here, as in *McFadden*, Perkins' prior convictions had not been vacated prior to his armed habitual criminal conviction, they could properly serve as predicates for that conviction." *Id.*

¶ 27 The same reasoning from *Perkins* applies to the defendant's attempt to distinguish the AHC statute in this case. Thus, we reject the defendant's first argument raised in opposition to the application of *McFadden* to support the AHC offense in this case.

¶ 28 The second argument raised by the defendant to oppose the application of *McFadden* has also been rejected by our court. Specifically, the defendant asserts that United States Supreme Court precedent, including *Montgomery v. Louisiana*, 577 U.S. ___, 136 S. Ct. 718 (2016) and *Ex parte Siebold*, 100 U.S. 371 (1880), precludes the use of a prior conviction, premised on a statute later held unconstitutional, as a predicate for the AHC offense. The defendant urges that because the *McFadden* decision of our supreme court "did not address" this authority from the United States Supreme Court, we are "not bound by *McFadden*."

¶ 29 In *Montgomery*, the United States Supreme Court held that the prohibition against mandatory life sentences without parole for juvenile offenders was a substantive rule of constitutional law entitled to retroactive effect. 577 U.S. at ___, 136 S. Ct. at 734. In so holding, the United States Supreme Court recognized: "A conviction or sentence imposed in violation of a substantive rule is *** void. See *Siebold*, 100 U. S., at 376. It follows *** that a court has no authority to leave in place a conviction or sentence that violates a substantive rule,

- 8 -

regardless of whether the conviction or sentence became final before the rule was announced." *Id.* at ___, 136 S. Ct. at 731.

¶ 30     The defendant asserts that *Montgomery* and other United States Supreme Court precedent prevents "States from ever punishing a citizen, whether directly or collaterally, based on a law that is facially unconstitutional." He asserts that our supreme court's decision in *McFadden* violates this principle by permitting the State to use an unconstitutional conviction for AUUW to support a conviction for UUWF. He argues that, under *Montgomery*, the State "cannot give legal effect to a conviction under a facially unconstitutional criminal statute," which will result if his prior AUUW conviction is allowed to support his AHC conviction. In other words, he argues that we cannot follow the reasoning of our supreme court in *McFadden* because it runs afoul of United States Supreme Court precedent.

¶ 31     Again, we note that this argument was addressed and rejected by our court in *Perkins*, which upheld an AHC conviction predicated on the form of AUUW invalidated by *Aguilar*. *Perkins*, 2016 IL App (1st) 150889, ¶¶ 8-9. In *Perkins*, the defendant similarly argued that, pursuant to *Montgomery*, *Aguilar* was entitled to "retroactive effect and that the State's reliance on his prior UUWF and AUUW conviction violates *Montgomery*'s central premise: 'There is no grandfather clause that permits States to enforce punishment the Constitution forbids.' " *Id.* ¶ 8 (quoting *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 731).

¶ 32     However, our court rejected the argument (repeated by the defendant in this case) that our supreme court's decision in *McFadden* had ignored or violated *Montgomery*:

"Perkins contends that our supreme court 'ignored' the decision in *Montgomery*. But as the State points out, prior to oral argument in *McFadden*, counsel sought and was granted leave to cite *Montgomery* as additional authority. In that motion, counsel advanced the same arguments presented here. In response, the State argued, as it does here, that *Montgomery* posed no constitutional impediment to affirmance of the defendant's UUWF conviction given that defendant was not seeking to vacate his prior conviction ***, but instead was challenging his status as a convicted felon at the time of his trial. The State argued that in this context, *Lewis v. United States*, 445 U.S. 55, 60-62 (1980), which held that a defendant's failure to vacate a prior felony conviction on grounds that it was unconstitutional was fatal to a challenge to a felon-in-possession conviction, controlled. We agree with the State.

At the time of Perkins' armed habitual criminal conviction he had prior UUWF and AUUW convictions. Because those convictions had not been vacated at the time Perkins possessed a firearm ***, they could properly serve as the predicates for his armed habitual criminal conviction." *Id.* ¶¶ 9-10.

¶ 33     The same reasoning from *Perkins* applies to support the defendant's AHC conviction in this case. At the time of the defendant's AHC conviction, he had two prior convictions, including an AUUW conviction, that were qualifying predicate offenses under the AHC statute. As those convictions had not been vacated at the time of the defendant's arrest in July 2012, they could properly serve as the predicates for his AHC conviction. In light of the foregoing, we conclude that, pursuant to *McFadden* and *Perkins*, the defendant's AHC conviction could be predicated on his prior conviction for AUUW, notwithstanding that the prior conviction stemmed from the statutory provision later held unconstitutional in *Aguilar*.

¶ 34    We now turn to the defendant's separate argument, that his AHC and UUWF convictions should be reversed because the State failed to prove beyond a reasonable doubt that he had constructive possession of the firearm and ammunition recovered by the police.

¶ 35    When the sufficiency of the evidence is challenged on appeal, we must determine " 'whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Graham*, 392 Ill. App. 3d 1001, 1008-09 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A reviewing court affords great deference to the trier of fact and does not retry the defendant on appeal. *People v. Smith*, 318 Ill. App. 3d 64, 73 (2000). It is within the province of the trier of fact "to assess the credibility of the witnesses, determine the appropriate weight of the testimony, and resolve conflicts or inconsistencies in the evidence." *Graham*, 392 Ill. App. 3d at 1009. The trier of fact is not required to accept any possible explanation compatible with the defendant's innocence and elevate it to the status of reasonable doubt. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 229 (2009). A reviewing court will not substitute its judgment for that of the trier of fact. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). A reviewing court must allow all reasonable inferences from the record in favor of the State. *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). A criminal conviction will not be reversed "unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt as to the defendant's guilt." *Graham*, 392 Ill. App. 3d at 1009.

¶ 36    The defendant argues that the State failed to prove beyond a reasonable doubt that he had constructive possession of the assault rifle and ammunition that were found in the attic of the home, where he had been living in the first-floor unit for a short time; the apartment unit contained other family members' possessions that had been moved and stored in the attic to make room for him; others had lived there before him; other family members received mail there and had keys to the unit; and he did not admit to owning the contraband.

¶ 37    The State counters that the evidence established beyond a reasonable doubt that the defendant possessed the assault rifle and ammunition, which satisfied the element of possession supporting both his convictions for AHC and UUWF. The State specifically argues that the defendant was proven to have constructive possession of the assault rifle and ammunition in his attic where the evidence showed that he had knowledge of the weapon's presence and had exclusive control over the area where the weapon was located.

¶ 38    A person commits the AHC offense if he possesses a firearm after having been convicted of two or more enumerated predicate offenses. See 720 ILCS 5/24-1.7 (West 2012). A person commits the offense of UUWF if he possesses a firearm or firearm ammunition after having been convicted of a prior felony. See 720 ILCS 5/24-1.1(a) (West 2012).

¶ 39    "Knowing possession" can be either actual or constructive. *People v. Brown*, 327 Ill. App. 3d 816, 824 (2002). Because the defendant was not found in actual possession of the assault rifle, the State had to prove that he constructively possessed it. See *People v. McCarter*, 339 Ill. App. 3d 876, 879 (2003). To establish constructive possession, the State must prove that the defendant (1) had knowledge of the presence of the weapon and (2) exercised immediate and exclusive control over the area where the weapon was found. *Id.* "Evidence of constructive possession is often entirely circumstantial." (Internal quotation marks omitted.) *Id.* "Knowledge may be proven by evidence of a defendant's acts, declarations or conduct from which it can be inferred he knew the contraband existed in the place where it was found." *People v. Ross*, 407 Ill. App. 3d 931, 936 (2011). "Control is established when a person has the

- 10 -

'intent and capability to maintain control and dominion' over an item, even if he lacks personal present dominion over it." *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17 (quoting *People v. Frieberg*, 147 Ill. 2d 326, 361 (1992)). Control over the area where the contraband was found gives rise to an inference that the defendant possessed the contraband. See *McCarter*, 339 Ill. App. 3d at 879. "Knowledge and possession are questions of fact to be resolved by the trier of fact, whose findings should not be disturbed upon review unless the evidence is so unbelievable, improbable, or palpably contrary to the verdict that it creates a reasonable doubt of guilt." *People v. Luckett*, 273 Ill. App. 3d 1023, 1033 (1995).

¶ 40    Viewing the evidence in a light most favorable to the State, a trier of fact could find that the defendant had constructive possession over the assault rifle and ammunition. The evidence shows that on July 14, 2012, Officer Tweedle found an assault rifle and ammunition in the attic of the defendant's home. The first-floor unit, where the defendant lived, had stairs leading to the attic from the enclosed back porch. The enclosed back porch was accessible from the rear of the kitchen. Neither the entry leading to the enclosed back porch nor the attic had a door. According to Officer Tweedle, the assault rifle was loaded and found along with a box of .223-caliber bullets nearby. Both Officers Tweedle and Pozulp testified that nothing obscured their view of the assault rifle, which was located near the entrance of the attic. At the time of the parole compliance check, the defendant was alone in the first-floor unit. The defendant's great-aunt, Patricia, testified that the defendant was the only person living in the first-floor unit at the time of his arrest and that Patricia lived in the basement unit of the residence. Evidence was also presented to the trial court that when asked about the assault rifle during police interrogation, the defendant remarked that, "the hood's crazy, we're at war with these GDs out here" and that "I'm not worried about that, and my lawyer will handle this." On cross-examination, Officer Pozulp confirmed that the defendant had told the police during interrogation to "go ahead and charge me with that gun."

¶ 41    Given this evidence, we find that the trier of fact could reasonably have concluded that the defendant had knowledge of the presence of the weapon and maintained control over the area where the contraband was found. When questioned about the recovered assault rifle during police interrogation, the defendant neither registered surprise as to its existence nor made any attempt to deny his ownership of the weapon. Instead, he responded to police inquiry by making statements which were tantamount to an explanation as to his need for it—for protection. His statements, coupled with corroborating evidence of the weapon's condition at the time it was found by the police (loaded with one round in the chamber, 41 live rounds in a banana magazine, along with an additional 43 rounds of ammunition in a nearby box), gave rise to a reasonable inference that the defendant had knowledge of the presence of the assault rifle and ammunition. The defendant now argues that his postarrest statements to the police were ambiguous at best and that, "[i]n the absence of any other evidence corroborating [his] constructive possession," they were not sufficient to support his convictions beyond a reasonable doubt. He specifically points out that the State produced no physical evidence such as fingerprints linking him to the assault rifle or ammunition. We reject this contention. As noted, evidence of constructive possession is often entirely circumstantial. *McCarter*, 339 Ill. App. 3d at 879; *People v. Stack*, 244 Ill. App. 3d 393, 399 (1993) (defendant's knowledge of the existence of a firearm within his possession may be inferred from circumstantial evidence). Thus, in viewing the evidence in a light most favorable to the State, we find that the trial court could reasonably have construed the defendant's statements to the police as a tacit

confirmation of his knowledge that the weapon was located in the attic. See *Ross*, 407 Ill. App. 3d at 936 ("[k]nowledge may be proven by evidence of a defendant's acts, declarations or conduct from which it can be inferred he knew the contraband existed in the place where it was found"); see generally *People v. Brown*, 327 Ill. App. 3d 816 (2002) (affirming defendant's conviction for UUWF based on constructive possession, where the circumstantial evidence was corroborated by defendant's statement to the police about the weapon).

¶ 42    We further find that the evidence presented at trial was sufficient to establish that the defendant exercised immediate and exclusive control over the attic where the assault rifle and ammunition were found. Evidence presented at trial showed that the defendant lived alone in the first-floor unit of the residence at the time of his arrest. The trial court also heard evidence that the attic, where the assault rifle and ammunition were recovered, was directly accessible from the defendant's first-floor unit. Although Patricia testified that both she and the defendant had physical access to the attic, she stated that she was not aware of the presence of the assault rifle and the ammunition in the attic. The trial court, as the trier of fact, also noted for the record that Patricia "had a tremendous amount of difficulty walking in and out of the court"; that she was "aided by a cart that is on wheels that also has a seat which she sat in when she testified"; and that she "did not take the two or three steps up to the witness stand." Viewing the evidence in a light most favorable to the State, we find that the trial court could reasonably have concluded that the defendant exercised exclusive control over the attic where the contraband was found, where it could reasonably be inferred from the record that the defendant was the only able-bodied person living at 5210 South Morgan Street who could have climbed the attic stairs and accessed the attic space in order to place the weapon there.

¶ 43    Nonetheless, the defendant makes a number of arguments claiming that he had no exclusive control over the attic because others also could have accessed the attic. He points to Patricia's testimony that Loretta and Willie each had a key to the residence; that before the defendant moved into the first-floor unit in April 2012, other family members had brought furniture and items into the apartment and had also "tried to clear some things out to make the space better for him"; that some items in the attic were there before the defendant moved into the residence; and that there was mail that was addressed to different family members at the 5210 South Morgan Street location. We reject this contention. Here, the trial court heard Patricia's testimony that Loretta's key was defective and that Loretta no longer possessed it. Although evidence was presented at trial that both Patricia and the defendant had access to the attic, it could not reasonably be concluded that Patricia could have climbed the stairs to the attic on her own, as noted by the trial court's findings that she was physically limited. No evidence was presented to the trial court that Willie, as an owner of the residence, accessed the attic at any point before or during the defendant's stay in the first-floor unit. Nor was any evidence presented to show that different family members, to whom mail was addressed at that location, physically came to the residence to pick up their mail. Indeed, the trial court found that the fact that there was mail addressed to different family members at the 5210 South Morgan Street location in no way indicated that "they were coming into this house to get their mail and were going up into the [d]efendant's apartment and up into that attic." While Patricia testified that other family members brought furniture and items into the first-floor unit in preparation for the defendant's arrival in April 2012, and the attic contained items before the defendant moved in, the trial court was not required to speculate whether the assault rifle and ammunition were among those items placed in the attic by someone else. See *Siguenza-Brito*,

- 12 -

235 Ill. 2d at 219 (the trier of fact was not required to accept any possible explanation compatible with the defendant's innocence and elevate it to the status of reasonable doubt). Moreover, it was within the province of the trial court, as the trier of fact, to assess Patricia's credibility and determine what weight to give to her testimony. See *Graham*, 392 Ill. App. 3d at 1009 (it is within the province of the trier of fact "to assess the credibility of the witnesses, determine the appropriate weight of the testimony, and resolve conflicts or inconsistencies in the evidence"). Thus, viewing the evidence in the light most favorable to the State, we find that the evidence established that the defendant had constructive possession of the assault rifle and ammunition that were recovered from the attic by the police. Accordingly, the defendant's AHC and UUWF convictions must stand.

¶ 44       For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 45       Affirmed.