2020 IL App (1st) 180528-U

No. 1-18-0528

Order filed January 10, 2020

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 9026 |
| | ) | |
| JESSE LAWRENCE, | ) | Honorable |
| | ) | Michael B. McHale, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Hoffman and Justice Delort concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's conviction for aggravated unlawful use of a weapon is affirmed where the evidence supported the trial court's inference that he constructively possessed a firearm.

¶ 2    After a bench trial, defendant was convicted of three counts of aggravated unlawful use of a weapon (AUUW). The court merged the counts and sentenced defendant to one year's imprisonment. Defendant appeals, arguing that the evidence was insufficient to establish that he possessed the firearm. We affirm.

¶ 3    Defendant was charged by information with nine counts of AUUW. The State proceeded on counts I-III, which alleged, in relevant part, that defendant knowingly carried in a vehicle an uncased, loaded, and immediately accessible firearm when he was not on his land, in his dwelling, or in his place of business, and lacked a valid concealed carry license (CCL) or Firearm Owner's Identification (FOID) card. 720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5); (a)(1), (a)(3)(C) (West 2014).

¶ 4    The court held a hearing on defendant's motion to quash arrest and suppress evidence simultaneously with his bench trial. The State called Detective Bradley Ruzak, who testified that on May 26, 2015, at 8:52 p.m., he was on patrol in an unmarked vehicle with Officer Damen Balesteri and Officer Dawn Hubbard.[1] Detective Ruzak saw a tan Chevrolet Cavalier run a stop sign on 65th Street and turn onto Stewart Avenue. Detective Ruzak activated his vehicle's emergency equipment and initiated a traffic stop. Defendant was the driver and sole occupant of the Cavalier.

¶ 5    Detective Ruzak looked into the Cavalier as he exited his vehicle and noticed defendant "move his shoulders or make movements *** that were suspicious in nature." The officers approached the Cavalier. Detective Ruzak went to defendant's window and asked for his driver's license. Defendant was unable to produce a license. Detective Ruzak also smelled cannabis. He asked defendant to exit the Cavalier and detained him.

¶ 6    Detective Ruzak searched the Cavalier using his flashlight. He noticed that the driver's side seatbelt compartment was ajar, illuminated it, and saw what he recognized as the handle of a

---

[1] The first names of Officers Balesteri and Hubbard do not appear in the report of proceedings; but their first names are listed in an arrest report.

firearm. Detective Ruzak removed the firearm, a loaded blue steel .40-caliber semiautomatic. Detective Ruzak determined that defendant did not have a FOID card or CCL, and arrested him.

¶ 7    On cross-examination, Detective Ruzak admitted he could not see the handle without his flashlight. The firearm was "concealed" in the compartment such that only the handle was visible when he illuminated the area. After observing the handle, he pulled back the compartment's frame to recover the firearm. Defendant did not own the Cavalier. He was given *Miranda* warnings on the scene, but refused to speak without an attorney present.

¶ 8    On redirect examination, Detective Ruzak clarified that the seatbelt compartment where he located the firearm was situated at shoulder height. He explained that "there is a driver's side door, and then there is a passenger driver's side door, and *** that frame is split between the two doors that holds the housing for the seatbelt." On recross-examination, Detective Ruzak stated he did not know exactly what defendant's "suspicious" movements entailed; it was possible defendant was "moving to the sound of music on his radio" or "searching for his driver's license." No fingerprints were recovered from the seatbelt compartment.

¶ 9    Officer Balesteri testified that he helped Detective Ruzak search the vehicle. In the glove compartment, Officer Balesteri found receipts for tolls incurred by the Cavalier which defendant had paid. The receipts, which were entered into evidence, were dated February 8, 2015.

¶ 10   The State entered a stipulation that at the time of arrest, defendant did not have a FOID card or CCL.

¶ 11   The trial court denied defendant's motion to quash arrest and suppress evidence. In his case-in-chief, defendant entered a certified document from the Secretary of State of Illinois showing that on May 26, 2015, defendant had a valid driver's license. Defense counsel moved for

a directed verdict, arguing that the evidence was insufficient to establish defendant possessed the firearm. The State argued defendant had constructive possession of the firearm because he was the sole occupant of the vehicle and Detective Ruzak saw defendant make furtive movements.

¶ 12    The court denied the motion for a directed verdict, explaining that "the fact that the compartment *** was still left ajar is strong circumstantial evidence that the defendant placed [the firearm] there after being pulled over and it does show knowledge." The parties declined further argument, and the court found defendant guilty on counts I-III.

¶ 13    Defendant filed a motion to reconsider the motion to quash arrest and suppress evidence and a motion for a new trial, both of which the trial court denied. The case proceeded to sentencing, where the court merged the counts and sentenced defendant to one year's imprisonment.[2] Defendant did not file a motion to reconsider sentence.

¶ 14    On appeal, defendant argues that the evidence was insufficient to establish that he possessed the firearm.

¶ 15    We must first determine the appropriate standard of review. Defendant argues that *de novo* review applies because the operative facts are undisputed. See *People v. Lucas*, 231 Ill. 2d 169, 174 (2008). The State argues that we should apply the standard for reviewing the sufficiency of the evidence pursuant to *Jackson v. Virginia*, 443 U.S. 307 (1979). We agree with the State.

¶ 16    Detective Ruzak testified as to the circumstances of the traffic stop and his recovery of the firearm. Based on those circumstances, the trial court inferred that defendant had constructive possession of the firearm. Defendant argues that this inference was not supported by the record.

---

[2] The trial court did not state the count into which the other counts merged, nor does this information appear on the mittimus.

Challenges to inferences made by the trial court are reviewed for the sufficiency of the evidence. See *People v. Loggins*, 2019 IL App (1st) 160482, ¶¶ 29-32.

¶ 17    When evaluating the sufficiency of the evidence, the reviewing court considers the evidence in the light most favorable to the State and determines whether any rational fact finder could have found defendant guilty beyond a reasonable doubt. *People v. Drake*, 2019 IL 123734, ¶ 21. At a bench trial, the judge is the fact finder and makes all determinations regarding witness credibility, the weight of evidence, and the reasonable inferences to be drawn from the testimony. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 233 (2009). The reviewing court must not substitute its judgment for that of the fact finder regarding the weight of evidence and witness credibility. *People v. Bradford*, 2016 IL 118674, ¶ 12. The reviewing court "will not reverse the trial court's judgment unless the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt." *People v. Newton*, 2018 IL 122958, ¶ 24.

¶ 18    To establish the elements of AUUW, the State was required to prove, in relevant part, that defendant possessed a firearm in a vehicle and did not have a valid CCL or FOID card at the time. 720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5); (a)(1), (a)(3)(C) (West 2014). Here, defendant challenges the sufficiency of the evidence regarding possession.

¶ 19    To establish this element, the State may introduce evidence that a defendant had either actual or constructive possession of a firearm. *People v. Faulkner*, 2017 IL App (1st) 132884, ¶ 39. Here, the State pursued a constructive possession theory. "To establish constructive possession, the State must prove that the defendant: (1) had knowledge of the presence of the weapon and (2) exercised immediate and exclusive control over the area where the weapon was found." *Id.* Both

elements can be proven through circumstantial evidence. *People v. McCurine*, 2019 IL App (1st) 160817, ¶¶ 22-24.

¶ 20    "Control is established when the defendant has the capability and intent to maintain dominion and control over the contraband." *People v. Jackson*, 2019 IL App (1st) 161745, ¶ 27. A defendant's control over a vehicle from which contraband is recovered, including driving the vehicle, can support an inference that the defendant controlled the area where the weapon was found. See *People v. McNeely*, 99 Ill. App. 3d 1021, 1024 (1985). However, the defendant's control of a vehicle containing contraband does not by itself establish constructive possession; the State must also prove the defendant's knowledge of the item. *People v. Hampton*, 358 Ill. App. 3d 1029, 1031-33 (2005). In this context, a defendant's knowledge can be inferred from factors including "(1) the visibility of the weapon from defendant's position in the car, (2) the period of time in which the defendant had an opportunity to observe the weapon, (3) any gestures by the defendant indicating an effort to retrieve or hide the weapon, and (4) the size of the weapon." *People v. Bailey*, 333 Ill. App. 3d 888, 891-92 (2002).

¶ 21    Defendant challenges the sufficiency of the evidence for both elements. First, regarding control, defendant argues that the evidence was insufficient because he did not own the vehicle, the State did not introduce fingerprint evidence or other evidence he handled the firearm, and the toll receipts did not establish exclusive control of the vehicle.

¶ 22    The record shows that defendant was the driver and sole occupant of the vehicle, and Detective Ruzak found the firearm in an open compartment within defendant's reach. These were sufficient facts from which the court could infer control. First, defendant's status as driver can by itself support the inference that he controlled the area where the weapon was found. See *McNeely*,

99 Ill. App. 3d at 1024 (fact defendant was the driver, even when he had one passenger, was enough to demonstrate immediate and exclusive control of the area where the weapon was found); see also *People v. Janis*, 56 Ill. App. 3d 160, 163-64 (1977) (although defendant did not own a van where a weapon was found, his control was established when he was seen in the driver's seat).

¶ 23     Second, defendant's proximity to the firearm also allows for an inference that he controlled the area where the weapon was found. *People v. Ingram*, 389 Ill. App. 3d 897 (2009), is instructive. In *Ingram*, the defendant was in the front passenger seat of a vehicle he did not own. *Ingram*, 389 Ill. App. 3d at 898. After stopping the vehicle, officers discovered that the front passenger seat was broken and leaning on the backseat. *Id.* The officers recovered a firearm from the floor behind the driver's seat in an area that was accessible to the defendant due to the broken seat. *Id.* This court ruled that an inference the defendant controlled the area where the weapon was found was reasonable because the firearm was in a location he could "easily" reach. *Id.* at 900 (citing *People v. O'Neal*, 35 Ill. App. 3d 89, 91 (1975) (contraband "sufficiently accessible" to a defendant for purposes of control if it is within "easy reach")). Here, defendant was driving and was seated within arm's reach of the firearm. The court therefore had multiple bases to reasonably infer defendant had control over the area where the firearm was found.

¶ 24     Defendant also challenges the sufficiency of the evidence regarding his knowledge of the weapon. Initially, we note there is no evidence of the firearm's size or the time defendant had to observe the firearm. However, we find that other evidence, taken in the light most favorable to the State, was sufficient to support an inference of knowledge.

¶ 25     The determinative factor here is whether defendant made "any gestures *** indicating an effort to retrieve or hide the weapon." *Bailey*, 333 Ill. App. 3d at 892. Detective Ruzak testified

that he saw defendant making "suspicious" movements with his shoulders immediately after the stop. This testimony was sufficient to support an inference of knowledge.

¶ 26    Helpful on this point is *People v. Nesbit*, 398 Ill. App. 3d 200 (2010). In *Nesbit*, two officers testified that the defendant driver made hand movements towards the floor of the vehicle following a traffic stop. *Nesbit*, 398 Ill. App. 3d at 204. The officers examined the floor, and found a firearm partially concealed by the floorboard, with the handle in plain view. *Id.* The reviewing court ruled that this evidence supported an inference of knowledge, even though the defendant never said the firearm was his and did not own the vehicle. *Id.* at 210-11.

¶ 27    This case is analogous to *Nesbit*. Detective Ruzak saw defendant making movements with his shoulders. Moments later, Detective Ruzak saw the firearm's handle in a compartment located at shoulder height of defendant's location in the vehicle. From these facts, the trial court could reasonably infer defendant knew the firearm was in the seatbelt compartment. See also *People v. Grant*, 339 Ill. App. 3d 792, 798-99 (2003) (knowledge could be inferred where officers saw the defendant make movements towards the passenger seat and then recovered a firearm from that seat).

¶ 28    Defendant's citation to cases holding that furtive movements are by themselves insufficient to lend probable cause is misplaced. While furtive movements alone may not provide probable cause for a warrantless search, the issue in this appeal is whether evidence of furtive movements, taken alongside all the other evidence, was sufficient to prove defendant's guilt beyond a reasonable doubt. As we have explained, gestures such as the ones defendant made here can support an inference of knowledge. Additionally, the court was not required to give any weight to Detective Ruzak's concession that defendant could have been listening to music or looking for his

driver's license as the officers approached. The trial court, as fact finder, is tasked with drawing reasonable inferences, and is "not required to disregard inferences that flow normally from the evidence or seek out all possible explanations consistent with innocence and raise those explanations to a level of reasonable doubt." *People v. Castillo*, 2018 IL App (1st) 153147, ¶ 33.

¶ 29    The firearm's visibility also supports an inference of knowledge. Defendant argues that the firearm was "concealed," but Detective Ruzak testified that the handle was visible after he illuminated the seatbelt compartment with his flashlight. An item may still be in plain view if it is visible with the use of artificial illumination. See *People v. Epperley*, 33 Ill. App. 3d 886, 888-89 (1975) (necessity of artificial light does not mean item is not in plain view). Moreover, the fact that only the handle was visible does not invalidate the inference because knowledge can be inferred even when contraband is only partially visible. See *Nesbit*, 398 Ill. App. 3d at 210-11 (inference of knowledge supported where contraband is "protruding" from underneath a seat); *McNeely*, 99 Ill. App. 3d at 1024 (inference of knowledge supported where bag containing contraband was partially visible from under the vehicle's seat). This case is thus distinguishable from matters where contraband is concealed entirely (*Hampton*, 358 Ill. App. 3d at 1033) or partially concealed, but not necessarily visible from a defendant driver's position in the vehicle (*People v. Thomas*, 2019 IL App (1st) 162791, ¶ 28). Consequently, we find that the trial court properly concluded defendant had knowledge of the firearm.

¶ 30    In sum, the trial court reasonably inferred that defendant had control over the area where the firearm was found and knowledge of the firearm's presence, establishing constructive possession. Defendant's conviction for AUUW is therefore affirmed.

¶ 31    Affirmed.