2024 IL App (1st) 220921-U

No. 1-22-0921

Filed May 9, 2024

Fourth Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | 21 CR 9588 |
| | ) | |
| JOHN WILLIAMS, | ) | Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Rochford and Justice Ocasio concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Conviction reversed where the evidence was insufficient to prove the defendant constructively possessed a firearm.

¶ 2     Following a bench trial, John Williams was convicted of being an armed habitual criminal (AHC) and sentenced to 7½ years in prison. Williams appeals, arguing that the State failed to prove he either actually or constructively possessed a firearm. Alternatively, Williams contends

the State failed to establish the *corpus delicti* of the offense to corroborate his admissions. For the reasons that follow, we reverse.[1]

¶ 3                                                    I. BACKGROUND

¶ 4         Among other charges, the State alleged that Williams possessed a firearm on June 16, 2021, while having two predicate convictions under the armed habitual criminal statute.

¶ 5         At trial, Danarra Williams testified she was married to Williams, but they did not live together on June 16, 2021.[2] Danarra lived in the second floor apartment at 1629 South Hamlin Avenue in Chicago. Around 12:30 in the afternoon, Williams drove past and parked down the street. Danarra noticed a woman was sitting in the passenger seat of Williams's car. As Williams approached on foot, Danarra became upset and asked Williams what he was doing. Being "hotheaded," Danarra then retrieved a handgun from underneath the front stairs to the porch and chased Williams around a car. Danarra denied that she obtained the handgun from her upstairs apartment.

¶ 6         Police officers arrived a short time later and Danarra, who was standing near the curb, handed the weapon to them. At that time, Williams was on the stairs to the second floor apartment as he "was already on his way inside of the house before the police came." The police officers asked Danarra who the handgun belonged to, and she told them it was Williams's. Officers then went toward the apartment while Danarra remained on the porch. Williams returned and reached for the keys Danarra was holding. She pulled away and Williams said, "why are you trying to give the police my keys?" The police officers separated them. Danarra thought the officers perceived

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.
[2]They were still married at the time of the May 2022 trial.

them to be fighting. She denied that Williams had placed his arms around her and bent her over. When asked directly whether the handgun belonged to Williams, Danarra answered "no."

¶ 7    Chicago Police Officer Kyle Pezan testified that he responded to a call at 1629 South Hamlin on June 16, 2021, along with Officers Michaels and Smiley. Upon arrival, Officer Pezan observed Danarra standing in the street and Williams walking "in a hurried manner" up the exterior stairs leading to the second floor apartment. Danarra gave the handgun she was holding to Officer Smiley, who removed the magazine and racked the slide to ensure a round was not in the chamber. Upon Danarra's statement that "we" live on the second floor, Officer Pezan climbed interior stairs to that apartment. Upon finding the door open, he entered. No one was inside. Officer Pezan returned to the porch. As he came down the steps, he heard a "commotion." Upon reaching the porch, he observed Williams with his arms around Danarra from behind, leaning over her. Officer Pezan heard Williams say, "why did you give the police my gun!" The officers intervened and Williams let go.

¶ 8    Eventually, the officers placed Williams in handcuffs and transported him to a police station. Officer Pezan read Williams his *Miranda* rights. When asked by Officer Smiley about the handgun, Williams responded, "it's my gun. It's mine." Williams also stated that Danarra had retrieved it from "upstairs."

¶ 9    Officer Pezan testified that he was equipped with a body-worn camera (BWC) and authenticated video footage of both the incident and Williams's questioning at the station. Approximately five minutes of video from the incident and four minutes of video from the questioning were played for the court.

¶ 10    The first video shows officers encountering Danarra on the street while Williams is walking into the building. Danarra states that the handgun she is giving them is "his," referring to Williams,

and that is why it was in her residence. An officer asks Danarra if Williams has keys to the apartment. She responds that his keys are in the car. After searching the apartment for Williams, the officers find Williams with his arms around Danarra, saying, "why did you give the police my gun!"

¶ 11      In the second video, Williams answers questions after being advised of and acknowledging his *Miranda* rights. Williams explains that he "came home" and had an argument with Danarra because he was with another woman. He states, "she had my gun." Williams was asked where the handgun was kept and he answered, "in the house." He later acknowledged that Danara knew where he kept it. At least two more times, Williams confirms that the handgun is his.

¶ 12      On cross examination, Officer Pezan confirmed that he never observed Williams with a firearm, no firearm was found on his person, no firearms were found in the apartment, and no firearms were found in the vicinity of the building. The only firearm he observed was the one in Danarra's possession, which she was holding when the officers arrived.

¶ 13      Officer Ashton Smiley testified consistently with Officer Pezan. He added that the handgun Danarra handed him was a 9mm semi-automatic Smith & Wesson. When Officer Smiley asked Danarra where she obtained the handgun, she stated she had gone upstairs to retrieve it. Officer Smiley authenticated video footage of the incident from his BWC and approximately one minute of that footage was published. Officer Smiley similarly confirmed that he never observed Williams with a firearm and no other firearms were found.

¶ 14      The parties stipulated that Williams had two prior felony convictions for delivery of a controlled substance. The State rested and Williams moved for a directed finding, which was denied. Williams elected not to testify and presented no evidence. Following closing arguments, the court found Williams guilty of being an AHC. In announcing its finding, the court remarked:

"Defendant admitted at least four times that the weapon was his *** it's clearly heard on the video and testified by the officers, [that Williams said] 'why did you give the police my gun.'

Additionally, when he was at the district station being interviewed after being advised of *Miranda*, he stated several times that the gun was his."

¶ 15　　The court sentenced Williams to a prison term of 7 ½ years. Williams filed a timely notice of appeal.

¶ 16　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 17　　Williams argues the State failed to prove that he actually or constructively possessed a firearm. Williams was never observed in actual possession of a firearm. The evidence only revealed one firearm—the one Danarra was holding when police arrived, which she promptly gave to the officers. Constructive possession of that firearm was not shown, Williams contends, since Danarra indicated she retrieved it from the property on South Hamlin Avenue and testified Williams did not live there. Danarra was also heard on the BWC video telling the officers that Williams did not live there. In addition, Danarra testified that the firearm did not belong to Williams. Moreover, Williams argues that his statements admitting that the firearm was his were insufficient to prove constructive possession since the State failed to show he had dominion and control over the premises where the firearm was found.

¶ 18　　When a defendant challenges the sufficiency of the evidence to sustain their conviction, our review considers " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. McLaurin,* 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard " 'gives full play to the responsibility

of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *Id*. (quoting *Jackson*, 443 U.S. at 319). Thus, in our review of the evidence, we do not retry the defendant or substitute our judgment for that of the trier of fact. *Id*.

¶ 19    To convict a person of being an AHC, the State must prove, in relevant part, that the person possessed a firearm after having been convicted a total of two or more times of certain enumerated offenses. 720 ILCS 5/24-1.7(a) (West 2018). When a defendant is not found in actual possession of a firearm, the State must prove constructive possession. *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17. "To establish constructive possession, the State must prove that the defendant (1) had knowledge of the presence of the weapon and (2) exercised immediate and exclusive control over the area where the weapon was found." *People v. Faulkner*, 2017 IL App (1st) 132884, ¶ 39. "Evidence of both knowledge and control is often entirely circumstantial." (Internal quotation marks omitted.) *People v. McCurine*, 2019 IL App (1st) 160817, ¶ 22. " 'Knowledge may be proven by evidence of a defendant's acts, declarations or conduct from which it can be inferred he knew the contraband existed in the place where it was found.' " *Faulkner*, 2017 IL App (1st) 132884, ¶ 39 (quoting *People v. Ross*, 407 Ill. App. 3d 931, 936 (2011)). "Control is established when a person has the 'intent and capability to maintain control and dominion' over an item, even if he lacks personal present dominion over it." *Spencer*, 2012 IL App (1st) 102094, ¶ 17 (quoting *People v. Frieberg*, 147 Ill. 2d 326, 361 (1992)). "Knowledge and possession are factual issues, and the trier of fact's findings on these questions will not be disturbed unless the evidence is so unbelievable, improbable, or palpably contrary to the verdict that it creates a reasonable doubt of the defendant's guilt." (Internal quotation marks omitted.) *McCurine*, 2019 IL App (1st) 160817, ¶ 25.

¶ 20    Here, the State's evidence of Williams's constructive possession of the handgun relies on his multiple admissions that the gun was "mine" and Danarra's statement at the scene that the gun was "his." But neither said more. A statement that an item is "mine" or "his" may signify claimed or acknowledged ownership, but it does not necessarily indicate an intent and capability to maintain control and dominion over the item. A bare admission that an item is "mine," without more, requires too many assumptions and inferences to reach the conclusion that one has control over the item.

¶ 21    Williams's admissions that Danarra obtained the gun "from the house" where it was kept proved his knowledge that the gun was present there. We acknowledge that the State was not necessarily required to prove that Williams had control over the premises. *People v. Tates*, 2016 IL App (1st) 140619, ¶ 20 ("A defendant's lack of control of the premises will not preclude a finding of guilt if the circumstantial evidence supports an inference that the defendant intended to control the contraband inside."). But the State was required to prove that Williams had control over the handgun. With no evidence of how the handgun came to be in the apartment, specifics of where it was situated in the apartment, and what access Williams did or did not have to it, the State failed to demonstrate that Williams exercised control over the firearm. *Cf. People v. Brown*, 327 Ill. App. 3d 816, 826 (2002) (constructive possession proven despite lack of evidence connecting defendant to an apartment when the defendant admitted to police that he brought the weapons to the apartment).

¶ 22    For these reasons, we find that the evidence was so unbelievable, improbable, or palpably contrary to the verdict that it creates a reasonable doubt that Williams constructively possessed the handgun. Thus, a rational trier of fact could not find that the State proved all elements of AHC

beyond a reasonable doubt. Having found the evidence insufficient to prove constructive possession, we need not consider Williams's *corpus delicti* argument.

¶ 23                                    III. CONCLUSION

¶ 24        Based on the foregoing, we reverse the judgment of the trial court and vacate the conviction.

¶ 25        Reversed and vacated.