2019 IL App (1st) 160817
No. 1-16-0817
Opinion filed March 29, 2019

FOURTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15 CR 10431 |
| NATHANIEL McCURINE, | ) ) | The Honorable Timothy Joseph Joyce, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice McBride and Justice Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    After a jury trial, defendant Nathaniel McCurine was convicted of one count of armed habitual criminal and sentenced to nine years with the Illinois Department of Corrections (IDOC).

¶ 2    On appeal, defendant claims, first, that the State's evidence that he constructively possessed a gun was insufficient, where the gun was found in the smaller bedroom of defendant's two-bedroom apartment and defendant's girlfriend testified that defendant shared the apartment with another tenant who occupied the smaller bedroom. Second, although this

court has found the armed habitual criminal statute constitutional in three prior opinions, defendant claims that these opinions failed to adequately address the due process concerns inherent in labeling a defendant a "habitual" criminal and that the statute thereby creates an unfair prejudice against the accused in the eyes of the jury, thereby violating due process. In his initial brief, defendant also claimed that he was entitled to 253 days of sentencing credit, rather than the 250 days that he received at sentencing. However, in his reply brief, he withdrew this third claim.

¶ 3        For the following reasons, we affirm.

¶ 4                                BACKGROUND

¶ 5        In sum, the State's evidence at trial established that, in the early morning hours of June 18, 2015, IDOC agents and officers of the Chicago Police Department (CPD) performed a routine parole compliance check at defendant's second-floor apartment in Chicago. During the search, they recovered a gun in the smaller, second bedroom of defendant's two-bedroom apartment and arrested defendant.

¶ 6        Prior to trial, defendant filed two motions *in limine*, arguing that presenting the jury with a charge called "armed habitual criminal" was prejudicial, where defendant was stipulating to the two required prior felony convictions and that the jury should be presented instead with a charge of unlawful use of a weapon. The trial court denied the motions.

¶ 7        During the trial, Clarence Dumas, an IDOC agent, testified that on June 18, 2015, at 5:30 a.m., he went to defendant's apartment to conduct a routine parole compliance check. Dumas testified that a standard parole requirement is that a parolee may not possess firearms and that parolees are informed prior to their release from prison that they are subject to random compliance checks.

2

¶ 8    Dumas arrived at defendant's apartment building with several other IDOC agents and CPD officers. The building had four units. Dumas knocked repeatedly on the door downstairs to gain entry to the building and was admitted after knocking on a first-floor window. Dumas then went to the second floor and knocked for three minutes on defendant's apartment door with a brass door knocker. Dumas explained that he carried with him "a brass baseball bat" to use as "a door knocker." Although defendant responded, he did not open the door. Dumas then identified himself and stated he was there to conduct a parole compliance check. Defendant asked Dumas to wait a minute because defendant was not properly dressed. Dumas waited for another three minutes, during which time Dumas heard "moving around behind the door," before defendant opened the door.

¶ 9    After verifying defendant's identity, Dumas handcuffed defendant in the living room. Before conducting the search, Dumas asked defendant "is there anything in the house that does not belong, any large sums of cash"? Defendant "did not say that he had a weapon." Dumas determined that the apartment had only one occupant at that time since defendant was the only person present in the apartment. Dumas described the apartment as containing one larger bedroom with a bed and a nightstand; a smaller bedroom with a couple of boxes and some clothes in the closet but no bed, dresser, or television; a living room with a small twin-size bed, a couple of chairs, and a television set on a table; a small kitchen; and a bathroom. Dumas testified that the smaller bedroom did not contain anything that indicated that it was occupied and that the closet of the larger bedroom had more clothes than the closet of the smaller bedroom. Dumas described the apartment as a "small" four-room apartment.

¶ 10    Dumas began by searching the smaller bedroom, while other agents searched the other rooms. As Dumas entered the smaller bedroom, he could observe the inside of the

closet, since the closet had no door. In the closet were hanging some men's clothing, specifically a jacket and a couple of shirts. The top shelf had a couple of small boxes. At the bottom of the closet were bags with a few clothing items, a couple of small boxes, a laundry basket, and other small containers. One box had documents, which Agent Dumas did not discuss and was not asked about. The laundry basket was half-full of men's clothes. At the bottom of the basket and underneath the clothes, Dumas discovered a small grey Ziploc bag with a semiautomatic, .38-caliber gun. The bag was both zipped and opaque. The bag felt heavy, and by feeling the outside of the bag, Dumas believed it contained a weapon. Although Dumas unzipped the bag to verify that it was a gun, he did not remove the gun from the bag and did not touch the gun directly. After turning the gun over to CPD officers, Dumas completed the search of the apartment.

¶ 11    CPD Officer Joy McClain testified that on June 18, 2015, she was one of the CPD officers who accompanied IDOC agents to defendant's building for a parole compliance check. McClain described defendant's apartment as "small," explaining that one could observe the back of the apartment from the front door. McClain searched the larger bedroom, which contained a dresser; a bed with a blanket, pillows, and sheets; men's clothes both in the closet and on the floor; and men's shoes on the floor. McClain observed that the larger bedroom contained "[a] lot of" men's clothes—"a good size wardrobe"—and appeared "lived in." By contrast, the smaller bedroom did not have a bed or a dresser and did not look "lived in." Concerning the larger bedroom, McClain testified:

"ASSISTANT STATE'S ATTORNEY: Which room did you search?

McCLAIN: The bedroom with all the clothing in it and like dressers. So the defendant's. I believe it was the defendant's room."

Similarly, on cross, McClain testified:

"ASSISTANT PUBLIC DEFENDER [(APD)]: Now, you said you searched [defendant's] bedroom?

McCLAIN: I did.

* * *

[APD]: And you are saying that's [defendant's] bedroom. During this search, there was no gun in that bedroom?

McCLAIN: Not in that room, no."

McClain did not recall whether the larger bedroom had a door, but she did recall that the entrance to it was open.

¶ 12     McClain testified that, while she was searching the larger bedroom, Dumas entered and informed her that he had recovered a gun, which he handed to her. The gun included a magazine with five rounds in it and a bullet in the chamber. McClain unloaded it, placed the gun in her pocket, and later transported it back to the police station where she inventoried it. McClain handled the gun with her bare hands and did not have the gun tested for fingerprints or DNA evidence.

¶ 13     The parties stipulated that defendant had two prior qualifying felony convictions. The stipulation, which was read to the jury, did not state what the felonies were or that they were forcible felonies; rather, the stipulation provided only the case numbers for the felonies and stated that they were "qualifying" felonies. At the close of the State's case, defendant moved for a directed verdict, which the trial court denied.

¶ 14     The defense then called Felicia Adams, defendant's 26-year-old girlfriend, who testified that they had been dating for three years. Adams, who had been in the apartment

numerous times, testified that defendant lived there with a roommate named David Singleton, who occupied the bedroom where the gun was found. Singleton had been living with defendant since Adams first met defendant four years ago. Adams herself had lived in the apartment with defendant and Singleton for a few months, moving out only two months before defendant's arrest. Adams did not know how defendant and Singleton had first met or what sort of work he did. Adams had never been in Singleton's room. Although there was no lock on the door, Singleton always kept the door closed. Thus, she did not know if his room was larger or what was in it. Adams knew there was no lock on Singleton's door because she observed "the outside of the door every time [she] entered [defendant's] room."

¶ 15        Adams testified that she did not know anything about Singleton, except for his name and that he was defendant's roommate. Normally when she observed Singleton in the apartment, it was after 3 p.m., and she never observed him in the early mornings because, as defendant informed her, Singleton worked early in the morning. Adams was there the night before defendant's arrest. She first learned that defendant had been arrested when defendant called her from jail. She received a couple of more calls from defendant while he was in jail, in which he told her that he had learned from the police where the gun was found. After her testimony, the defense rested.

¶ 16        After listening to closing arguments and jury instructions, the jury deliberated and found defendant guilty. Defendant filed a posttrial motion for a new trial, arguing that the charge of armed habitual criminal should not have been read to the jury because it was too prejudicial and that the State had failed to prove constructive possession. The trial court denied defendant's motion. At the sentencing hearing, defendant stated that he knew that parole officers would visit and, thus, if he had known that his roommate had a gun, he would

have told him to dispose of it. The State asked for a sentence of 15 years and discussed defendant's prior criminal history, including convictions for murder, attempted murder, two robberies, and residential burglary, which he was on parole for when the instant offense occurred. After considering factors in aggravation and mitigation, the trial court sentenced defendant to 9 years with IDOC. This appeal followed.

¶ 17                                            ANALYSIS

¶ 18        On appeal, defendant claims (1) that the State's evidence that he constructively possessed a gun was insufficient and (2) that the armed habitual criminal statute violates due process. For the following reasons, we affirm.

¶ 19                                   I. Sufficiency of the Evidence

¶ 20        First, defendant challenges the sufficiency of the evidence against him. When reviewing a challenge to the sufficiency of the evidence, a court considers whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Wilkerson*, 2016 IL App (1st) 151913, ¶ 64; *People v. Woods*, 214 Ill. 2d 455, 470 (2005); *People v. Ray*, 232 Ill. App. 3d 459, 461 (1992). If the court answers this inquiry in the negative, then it must reverse the defendant's conviction. *Wilkerson*, 2016 IL App (1st) 151913, ¶ 64; *Woods*, 214 Ill. 2d at 470. However, a reviewing court must not retry the defendant or substitute its judgment for that of the trier of fact, particularly with respect to the credibility of the witnesses or the weight to be given each witness' testimony. *Wilkerson*, 2016 IL App (1st) 151913, ¶ 64; *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009); *People v. Ross*, 229 Ill. 2d 255, 272 (2008).

¶ 21 "A person commits the offense of being an armed habitual criminal if he or she *** possesses *** any firearm after having been convicted a total of 2 or more times" of a forcible felony. 720 ILCS 5/24-1.7(a) (West 2014). Since the parties stipulated to the qualifying offenses, the only element that the State had to prove was possession, which may be actual or constructive. *People v. Faulkner*, 2017 IL App (1st) 132884-B, ¶ 39 (in an armed habitual case, possession may be "either actual or constructive"). In its brief to this court, the State concedes: "Because defendant in this case was not found in actual possession of a firearm, the People were required to prove constructive possession."

¶ 22 "To establish constructive possession, the State must prove that the defendant (1) had knowledge of the presence of the weapon and (2) exercised immediate and exclusive control over the area where the weapon was found." *Faulkner*, 2017 IL App (1st) 132884-B, ¶ 39; *People v. McCarter*, 339 Ill. App. 3d 876, 879 (2003). Evidence of both knowledge and control is " 'often entirely circumstantial.' " *Faulkner*, 2017 IL App (1st) 132884-B, ¶ 39 (quoting *McCarter*, 339 Ill. App. 3d at 879).

¶ 23 First, a defendant has control when he has the " ' "intent and capability to maintain control and dominion" ' " over the item, but does not have immediate personal control of it. *Wilkerson*, 2016 IL App (1st) 151913, ¶ 65 (quoting *People v. Carodine*, 374 Ill. App. 3d 16, 25 (2007), quoting *People v. Frieberg*, 147 Ill. 2d 326, 361 (1992)); see also *Faulkner*, 2017 IL App (1st) 132884-B, ¶ 39. "Control over the area where the contraband was found gives rise to an inference that the defendant possessed the contraband." *Faulkner*, 2017 IL App (1st) 132884-B, ¶ 39; *McCarter*, 339 Ill. App. 3d at 879.

¶ 24 Second, knowledge may be shown by circumstantial evidence of the defendant's acts or conduct, from which it may be inferred that he knew the contraband existed in the place

where it was found. *Faulkner*, 2017 IL App (1st) 132884-B, ¶ 39; *People v. Ross*, 407 Ill. App. 3d 931, 936 (2011).

¶ 25       " 'Knowledge and possession are factual issues, and the trier of fact's findings on these questions will not be disturbed unless the evidence is so unbelievable, improbable, or palpably contrary to the verdict that it creates a reasonable doubt of the defendant's guilt.' " *Wilkerson*, 2016 IL App (1st) 151913, ¶ 65 (quoting *People v. Brown*, 277 Ill. App. 3d 989, 998 (1996)).

¶ 26       *If* one viewed the evidence in the light most favorable to defendant, one could argue that (1) first, Dumas testified that parolees are informed prior to their release that they are not allowed to possess a gun and that IDOC will conduct random compliance checks and, thus, it was unlikely that defendant would knowingly allow a gun in his apartment; (2) second, since the agents showed up at 5:30 in the morning, it was reasonable that the officers needed to knock for a few minutes to gain defendant's attention and also reasonable that defendant was not yet dressed and needed a minute to dress as he, in fact, stated to the officers; (3) third, after the officers entered the apartment, defendant was immediately handcuffed in the living room, and no weapons were found on his person or immediately around him in the living room or in the room that Officer McClain testified was defendant's bedroom; (4) fourth, the firearm was not examined for fingerprints and was not handled in a way to ensure the preservation of fingerprints; (5) fifth, the only testimony at trial about who occupied the second, smaller bedroom was offered by defendant's girlfriend, and the State offered no evidence, such as a lease or photos of the names on the mailboxes or buzzer, to contradict her testimony; (6) sixth, defendant's girlfriend testified that the roommate, David Singleton, always kept the door to his room closed, so much so that she had never observed the inside of

the room in the three years that she had been dating defendant or during the months that she had resided in the apartment; and (7) finally, the only firearm was found in the second bedroom, in a laundry basket, underneath clothes, where defendant would not have had an opportunity to observe it, *if* it had been placed there by his roommate.

¶ 27        By contrast, viewing the evidence in the light most favorable to the State, as we are required to do, a rational juror could have found (1) first, since defendant knew he was not allowed to possess a gun, he had every motive to hide it once he heard the police at his door; (2) second, he had the opportunity to hide it since the police knocked on the door to the apartment building for several minutes, waking up the downstairs neighbors, and then knocked on defendant's apartment door for another three minutes and then waited an additional three minutes for defendant to open the apartment door; (3) third, defendant's girlfriend testified that one had to pass right by the door to the second bedroom when going to or from the larger bedroom; (4) fourth, Dumas did not indicate that he had any difficulty opening the door to the second bedroom when he arrived to search it and he testified that the closet had no door, leading to the reasonable inference that the one person in the apartment when the police arrived—namely, defendant—could have easily entered the closet to hide the weapon. Thus, even if one accepts the complete truth of the girlfriend's testimony, her testimony does not exonerate defendant but, rather, still leaves open the question of who placed the gun at the bottom of the clothes hamper in the second bedroom, prior to the officers' entry, and why. In addition, the jury could reasonably infer that the girlfriend had a bias since she had dated defendant for three years, had been at his apartment the night before his arrest and was still his girlfriend at the time of trial, and she knew prior to her trial testimony where the weapon was found.

¶ 28    When considering a claim of insufficient evidence by a criminal defendant, "[a] reviewing court must allow all reasonable inferences from the record in favor of the State." *Faulkner*, 2017 IL App (1st) 132884-B, ¶ 35; *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). Drawing all reasonable inferences from the record for the State, as we must, we find that a rational juror could have found both control and knowledge.

¶ 29    First, defendant's control was shown by the facts that the residence was admittedly his apartment, that he was the only person in the apartment at the time the police entered, and that the police did not observe any evidence that the second bedroom was separately inhabited, such as the presence of a bed, dresser, television or any furnishings, or the presence of a wardrobe of clothes, as were present in the first bedroom. Except for the testimony of defendant's girlfriend, there was no evidence of a separate resident in the room where the gun was found, and the jury may have found her testimony biased or unbelievable and, hence, not credible. In *Faulkner*, for example, this court found control, although the gun was found in the attic of a two-unit home, where defendant lived in the first-floor unit, where the attic was "directly accessible from the defendant's first-floor unit" by a set of stairs, and where the aunt who lived in the basement unit had difficulty walking. *Faulkner*, 2017 IL App (1st) 132884-B, ¶ 42. Viewing *Faulkner* as instructive, we find that the facts here are ones from which a rational juror could have found control because, first, this was a single unit and defendant was the only occupant when police arrived; second, except for the girlfriend's testimony, there was no evidence of a second tenant; and, third, the second bedroom was "directly accessible" (*Faulkner*, 2017 IL App (1st) 132884-B, ¶ 42) from defendant's own bedroom since the door to the second bedroom had no lock and one had to pass it to enter or exit the larger bedroom.

¶ 30        Next, the jury could have inferred knowledge from the same facts that showed defendant's motive and opportunity to conceal the gun. Even if we were to assume that the girlfriend's testimony was truthful, and the door to the smaller bedroom was always kept closed and the other tenants, like herself, never went in there, then there was little reason for the alleged tenant to feel a need to further hide the opaque gun bag at the bottom of a laundry basket, underneath a pile of clothes. This was triple concealment—opaque bag, in a basket, under clothes. By contrast, defendant had every motive to hide the bag underneath a pile of clothes, after he heard the police knocking at the door. Not only did he have the motive, but he also had the opportunity in both time and space. He had the spatial opportunity because the door to the second bedroom was not locked and was next to his own bedroom, and he had the temporal opportunity because the police spent time knocking on the building door until they woke up the downstairs neighbors and then spent three minutes knocking on defendant's apartment door and then spent another three minutes waiting for defendant to open the apartment door. Thus, defendant had both the motive and opportunity to conceal the gun, and no motive for triple concealment would be apparent for another person. Viewing these facts in the light most favorable to the State and drawing every inference in the State's favor, a rational juror could reasonably infer defendant's knowledge of the gun's presence from these facts.

¶ 31        At oral argument, this court asked defendant for the best opinions concerning reasonable doubt in this case, and he cited *People v. Macias*, 299 Ill. App. 3d 480 (1998), and *People v. Wolski*, 27 Ill. App. 3d 526 (1975). We do not find either of these cases persuasive concerning the facts of this case. First, in *Macias*, this court found that the evidence was insufficient to prove that the defendant constructively possessed guns and drugs found in an

apartment, although he had keys for the apartment on a key ring of more than a dozen keys, where the parties stipulated that the electric service for the apartment was in another person's name and that hospital bills also showed that this apartment was the other person's residence, where the officers found no evidence that the defendant resided in the apartment, and where evidence showed that defendant resided in another location. *Macias*, 299 Ill. App. 3d at 481-83. *Macias* is inapposite because, in the instant case, there was no question that defendant resided in the apartment where the contraband was found.

¶ 32    In the almost half-a-century old case of *Wolski*, the defendant was convicted after a bench trial of possessing a small amount of marijuana and sentenced to serve five weekends in jail. *Wolski*, 27 Ill. App. 3d at 527. An officer testified that the defendant's mother, who lived upstairs, volunteered that the defendant's brother also lived in the basement apartment where the marijuana was found. *Wolski*, 27 Ill. App. 3d at 527. The State did not dispute this fact and did not present any additional evidence connecting the defendant to the marijuana, so this court found insufficient evidence. *Wolski*, 27 Ill. App. 3d at 528-29. While we wonder about the precedential value of an almost half-a-century old marijuana case with a five-weekend sentence, we observe that a mother's incriminating statements about her son have fewer credibility issues than a girlfriend's exonerating statements about her boyfriend. *Cf. Young v. Bryco Arms*, 213 Ill. 2d 433, 451-52 (2004) (a 41-year-old 1963 case had less persuasive value).

¶ 33    For the foregoing reasons, a rational juror could have reasonably found constructive possession, and thus, we do not find persuasive defendant's claim of insufficient evidence.

¶ 34                              II. Due Process

¶ 35          Next defendant argues that the armed habitual criminal statute violates due process. Defendant acknowledges that at least two prior opinions of this court have found this statute constitutional: *People v. Davis*, 405 Ill. App. 3d 585, 591, 595 (2010) (rejecting defendant's claim for a bifurcated proceeding and finding that the statute did not violate due process, although it placed his convictions before the jury), and *People v. Adams*, 404 Ill. App. 3d 405, 411-13 (2010) (rejecting defendant's claim for a bifurcated proceeding and finding that the statute did not violate due process). See also *People v. Allen*, 382 Ill. App. 3d 594, 597-600 (2008) (finding constitutional the offense of unlawful use of a weapon by a felon and rejecting defendant's claim that due process required a bifurcated proceeding). We observe that all three cases were from the First District, none had special concurrences or dissents, and none had overlapping panels, so that these cases represent the collective wisdom of nine justices of this court.

¶ 36          As we observed above, a person commits the offense of being an armed habitual criminal if he or she possesses any firearm after having been convicted a total of two or more times of "a forcible felony." 720 ILCS 5/24-1.7(a)(1) (West 2014). We review *de novo* defendant's challenge to the constitutionality of this statute. *People v. Pepitone*, 2018 IL 122034, ¶ 12.

¶ 37          All statutes carry a strong presumption of constitutionality. *Pepitone*, 2018 IL 122034, ¶ 12. As a result, courts will uphold statutes whenever reasonably possible and will resolve all doubts in favor of constitutionality. *Pepitone*, 2018 IL 122034, ¶ 12. To rebut the presumption that a statute is constitutionally valid, a party, like defendant, who seeks to

challenge a statute's constitutionality, must establish a clear violation. *Pepitone*, 2018 IL 122034, ¶ 12.

¶ 38        Defendant asserts that the armed habitual criminal statute violates due process. Both the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV) and article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, § 2) provide that no person shall be deprived of life, liberty, or property without due process of law. "[A] procedural due process claim asserts that the deprivation at issue is constitutionally invalid because the process leading up to it was deficient, whereas a substantive due process claim asserts that the deprivation at issue is [constitutionally] invalid in and of itself, irrespective of the process leading up to it." *People v. Cardona*, 2013 IL 114076, ¶ 17. Although defendant does not specify whether he is making a substantive or procedural due process claim, his claim appears to be procedural. In the case at bar, defendant challenges the process by which the jury was informed that he had two prior felony convictions and that he was accused of being a "habitual" armed criminal. Defendant claims that the trial court should have bifurcated the proceeding so that, after the trial court admitted the parties' stipulation to the two qualifying offenses, the jury should have been presented with only a charge of unlawful use of a weapon. Thus, if the trial court had granted his motion for this procedure, he would not be making this claim on appeal. See *Allen*, 382 Ill. App. 3d at 597-98 (this court considered, as a procedural due process claim, defendant's claim that, after he stipulated to his felon status, the trial court should have conducted a bifurcated proceeding).

¶ 39        Defendant also does not specify whether he is raising a facial or as-applied challenge. A facial challenge to the constitutionality of a statute is the most difficult to mount successfully since a statute is facially invalid only if no set of circumstances exists under

15

which it would be valid. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305-06 (2008). By contrast, in an as-applied challenge, a party protests how a statute was applied in the particular context in which he or she acted or proposed to act, and the facts surrounding his or her particular circumstances become relevant. *Napleton*, 229 Ill. 2d at 306. Since defendant's claim is based on the facts particular to his case, namely, that he stipulated to the qualifying felonies and that the trial court denied his motion for a bifurcated process, his claim appears to be an as-applied challenge.

¶ 40      Defendant claims that, because of the procedural infirmities whereby the jury was informed that he had two prior felonies and that he was accused of being an armed habitual criminal, the statute as applied to him fails the rational basis test. Defendant acknowledges that his claim does not affect a fundamental right and, thus, the rational basis test applies. *Pepitone*, 2018 IL 122034, ¶ 14. A statute passes the rational basis test if it is "reasonably related to a legitimate state interest." *Pepitone*, 2018 IL 122034, ¶ 16. In the case at bar, defendant acknowledges that the State has a legitimate interest in discouraging repeat offenders from possessing firearms, but he argues that the method employed was unreasonable. *Adams*, 404 Ill. App. 3d at 411 (reviewing the armed habitual criminal statute, this court found that the State had a legitimate interest "in deterring felons from possessing, receiving, or transferring firearms"). See also *Davis*, 405 Ill. App. 3d at 592 (reviewing the armed habitual criminal statute, this court found that "the State has a legitimate interest in preventing the danger associated with repeat felons having firearms").

¶ 41      As noted, this court has previously upheld the constitutionality of this same statute against prior due process challenges. However, defendant argues that the panels in *Davis* and *Adams* failed "to adequately address" defendant's argument that the statute is inherently

prejudicial by labeling a defendant a "habitual" criminal and by making his prior convictions an element of the offense submitted to the jury. Defendant acknowledges that he suffered no prejudice from the nature of his prior offenses, which were in this case murder and burglary, because the stipulation removed that information from the jury. See *People v. Walker*, 211 Ill. 2d 317, 338 (2004) ("when proving felon status is the only purpose for admitting evidence of a defendant's prior convictions, and the defendant offers to stipulate," a trial court abuses its discretion if it admits "the name and nature" of his prior convictions). Instead he argues that he suffered prejudice from having placed in front of the jury (1) the allegation that he was an armed habitual criminal and (2) the fact that he was previously convicted of two felonies.

¶ 42        First, an indictment is nothing more, or less, than an accusation that the State then has the burden of proving. See *People v. Rowell*, 229 Ill. 2d 82, 92-93 (2008); *People v. Grever*, 222 Ill. 2d 321, 327 (2006) (an indictment satisfies a criminal defendant's right to be informed of the nature and cause of the accusation against him). This court fails to see how being accused of being an armed habitual criminal is worse than being accused of being a murderer or a sexual abuser of children; yet, the allegations in those indictments are routinely presented to the jury. Defendant takes issue with the word "habitual" and with the fact that our legislature determined that two felonies qualifies a person as a habitual offender. However, that is a policy determination that our legislature is permitted to make. Courts have routinely found that "the legislative branch is far better suited to declare public policy *** due to its superior investigative and fact-finding facilities." *Blumenthal v. Brewer*, 2016 IL 118781, ¶ 77; *Moline School District No. 40 Board of Education v. Quinn*, 2016 IL 119704, ¶ 65 ("We have long recognized that the legislature is free to make those types of

judgments."); *Cates v. Cates*, 156 Ill. 2d 76, 110 (1993) ("[t]he preferred role of the legislature" is "as an expositor of public policy").

¶ 43    Second, defendant claims that he suffered undue prejudice from the fact that the jury was informed that he had previously committed two felonies. Defendant argued, both before this court and the court below, that the jury should have been presented only with the charge of unlawful use of a weapon. However, the jury would have still needed to know that defendant was a felon to understand why the second amendment[1] did not protect him in his own home. 720 ILCS 5/24-1.1(a) (West 2014) (it is unlawful for a person to possess a firearm even "in his own abode" if he has been convicted of a felony); *Ross*, 407 Ill. App. 3d at 942 ("the armed habitual criminal statute is a constitutionally permissible restriction of the second amendment right to bear arms"). In the case at bar, the jury needed some explanation of why multiple IDOC agents and CPD officers were banging on his door at 5:30 in the morning with a brass door knocker and handcuffing him upon entry. Thus, even if the trial court had granted the motion, the jury would have still known that he had committed a prior felony.[2] *Old Chief v. United States*, 519 U.S. 172, 178-79 (1997) (finding that the fact of defendant's prior conviction was relevant and, hence, admissible, for a charge of firearms possession by a felon). The issue is then whether defendant suffered undue prejudice from the jury's knowledge that there were two qualifying convictions as opposed to just one. This is too slim a difference to find a statute unconstitutional, particularly where, as in the case at bar, the stipulation did not inform the jury what the felonies were or even that they were

---

[1] In *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010), the United States Supreme Court found that the right to possess a handgun in the home for the purpose of self-defense is protected by the second amendment as a fundamental right. U.S. Const. amend. II (right "to keep and bear Arms"). See also *People v. Ross*, 407 Ill. App. 3d 931, 937-38 (2011).

[2] "If [jurors'] expectations are not satisfied, triers of fact may penalize the party who disappoints them by drawing a negative inference against that party." (Internal quotation marks omitted.) *Old Chief v. United States*, 519 U.S. 172, 188 (1997).

forcible felonies. Also, in defendant's case, if the jury thought that he had committed only two felonies, that is less than what he had actually committed.

¶ 44    For the above reasons, we cannot find that defendant suffered undue prejudice, and we are not persuaded to deviate from our well-established precedent. See *Adams*, 404 Ill. App. 3d at 412 ("the purpose of deterrence and punishment of recidivist offenders is effectively and reasonably achieved by" the armed habitual criminal statute); *Davis*, 405 Ill. App. 3d at 591-96; *Allen*, 382 Ill. App. 3d at 599 ("in cases where a defendant's felon status is an element of the offense, a stipulation to the prior felony conviction is the least prejudicial means of introducing the evidence"); *Walker*, 211 Ill. 2d at 338 ("the defendant's admission or stipulation is conclusive evidence of felon status which presents little or no risk of unfair prejudice").

¶ 45                                    CONCLUSION

¶ 46    On appeal, defendant claimed that the State's evidence that he constructively possessed a gun was insufficient and that the armed habitual criminal statute violated due process as applied to him. For the foregoing reasons, we do not find these claims persuasive and affirm.

¶ 47    Affirmed.