2022 IL App (1st) 200468-U

No. 1-20-0468

Order filed August 2, 2022

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 15645 |
| | ) | |
| CARL VAUGHN, | ) | Honorable |
| | ) | Michele M. Pitman, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE FITZGERALD-SMITH delivered the judgment of the court. Justices Howse and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's written statement that he possessed a firearm was sufficiently corroborated by the presence of the loaded firearm in the vehicle he was driving.

¶ 2    Following a bench trial, defendant Carl Vaughn was found guilty of two counts of unlawful use or possession of a firearm and ammunition by a felon (UUWF). The court merged the counts and imposed three years' imprisonment. On appeal, defendant argues that the State failed to

establish the *corpus delicti* of the offense where the finding of guilt rested on an uncorroborated written statement by defendant. We affirm.

¶ 3   Defendant was charged by indictment with multiple offenses arising from an incident on October 7, 2018. The State proceeded on two counts of UUWF, which alleged, in relevant part, that defendant unlawfully possessed on or about his person a firearm (count VII) and ammunition (count VIII) after having been convicted of a felony (720 ILCS 5/24-1.1(a) (West 2018)).

¶ 4   Illinois state trooper Edward Kazupski testified that on October 7, 2018, while patrolling I-94 at 3:55 p.m. in a marked squad vehicle, he observed a Toyota Camry speeding and changing lanes without signaling. Kazupski paced the vehicle for approximately one mile before conducting a traffic stop. In court, Kazupski identified defendant as the driver and sole occupant.

¶ 5   During the stop, Kazupski detected the odor of burnt cannabis in defendant's vehicle. Defendant could not produce a driver's license, so Kazupski asked him to exit the vehicle. Kazupski handcuffed defendant, detained him in the back of the squad vehicle, and informed defendant that he would search defendant's vehicle due to the burnt cannabis odor.

¶ 6   On the front passenger floorboard, Kazupski discovered a pink purse containing a magazine with 17 rounds of ammunition. Kazupski told defendant about the magazine and asked whether additional contraband was in the vehicle. Defendant said there was not. Illinois state trooper Bryce Heaton arrived soon thereafter and discovered a loaded firearm underneath a child seat on the backseat of the vehicle.

¶ 7   The State entered People's Exhibit Nos. 1a, 1b, and 1c, which Kazupski identified as the firearm and two magazines, one from the purse and the other from the firearm.

¶ 8    Kazupski searched defendant, determined that he did not possess a Firearm Owners Identification card, and transported him to a police station. There, Kazupski gave defendant warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and defendant agreed to give a written statement, People's Exhibit No. 2. Kazupski identified his and defendant's signatures thereon, and testified that defendant had an opportunity to change and reread the statement prior to signing it.

¶ 9    Kazupski read the statement, which is also included in the record on appeal. The written statement states:

> "I got pulled over for speeding, the police officer told me to step out of the car because I didnt have a ID with me. He then to step without my permission to search the vehicle. He never found drugs. Bt says thats the reason he wanted to search my girl car. I told him I didnt know the gun was left in the car and that my brother who's gun it was, was in the car when I cut his hair earlier. He left it and I was only trying to return it safe and sound. Its not stolen and I dont own a gun. I never resisted and I never tried anything."

¶ 10    Kazupski testified that defendant stated that his "brother's" first name was Michael, but defendant did not know Michael's last name.

¶ 11    On cross-examination, Kazupski testified that he paced defendant for about a mile and activated his lights for another half mile before defendant stopped. While driving behind defendant, and later, while approaching defendant's vehicle on foot, Kazupski never saw him make furtive movements or reach towards the front passenger seat or the back seat. Defendant was cooperative while exiting the vehicle and did not object to the search of the vehicle. Neither the

firearm nor ammunition were visible when Kazupski first looked inside the vehicle. No ownership papers for the vehicle were recovered during the search.

¶ 12    Heaton testified that defendant was detained in Kazupski's vehicle when Heaton arrived. Heaton searched defendant's vehicle and, under a child's car seat on the backseat, discovered a pistol with one round chambered and 16 rounds in its magazine. The firearm was "within an arm or two's reach" from the front seat of the vehicle, though Heaton did not "know exactly." Heaton identified People's Exhibit No. 1a as the firearm.

¶ 13    The State entered a certified copy of conviction showing that defendant was convicted of felony retail theft in case No. 2013 CF 115.

¶ 14    Defendant testified that he was a licensed barber in Indiana. On October 7, 2018, he borrowed his girlfriend Kiara Fryer's Camry to drive to Gary, Indiana, to cut his "brother" Mike's hair. Mike was not his biological brother, but a close friend whom he had known about four years in October 2018; they were no longer close at the time of trial. Fryer left her bag in the vehicle, but defendant did not touch it. The vehicle contained a car seat for Fryer's two-year-old child. Defendant never placed the child in the seat or moved the seat in or out of the vehicle.

¶ 15    Defendant left Fryer's house in Chicago around 2 p.m., picked up Mike, and drove to defendant's mother's house in Gary. After the haircut, defendant stopped at a gas station, dropped off Mike, and drove toward Chicago. On the way, a trooper curbed defendant, had him exit the Camry, and placed him in the squad vehicle. The trooper searched the Camry and informed defendant that he found a magazine in the pink bag on the passenger side floorboard. Another officer arrived and found the firearm.

¶ 16    A sergeant transported defendant to a station and questioned him during the drive and when they arrived. Defendant testified that his "original statement" to police was that he "did not know the gun was in the vehicle." After making this statement, however, he wrote that he was trying to return the firearm to his "brother," meaning Mike, because Mike was the last passenger in the vehicle and had a firearm permit. Defendant concluded that the firearm was Mike's after officers had questioned him for two hours and told him the firearm was "legal." Defendant further testified, however, that he was not trying to return the firearm to anyone, never saw Mike with a firearm, and did not know the firearm was in the vehicle until the troopers found it. Defendant had not touched Fryer's possessions and was unaware of the magazine in the purse.

¶ 17    On cross-examination, defendant testified that he knows where Mike "lays his head most of the time," but not his last name. Defendant received the *Miranda* warnings prior to writing and signing his statement. Defendant testified that the statement is contradictory, but maintained that he "didn't know the gun was in [the vehicle] until [the trooper] found it." Defendant knew he was not allowed to possess a firearm due to his prior felony conviction. He agreed that he could have contacted Mike, but stated that officers would not let him make the call; therefore, he did not "clear up" the mistake.

¶ 18    On redirect, defendant testified that he told police that the firearm belonged to Mike based on what he learned during questioning. Defendant was not allowed to call Mike before he wrote the statement. Defendant agreed that he wrote the statement because he believed "everything would be cleared up" since Mike owned the firearm. He tried to call Mike and was stopped. In the statement, he did not mention asking to call Mike because the officers "told me, I have to see my

day in court. And they watched me write everything. They wasn't going to approve anything against them."

¶ 19    The defense entered a stipulation that the Camry was registered to Fryer on the date of the incident.

¶ 20    The court found defendant guilty of UUWF predicated on possessing a firearm (count VII) and ammunition (count VIII). Regarding count VIII, the court clarified that the finding pertained to the ammunition inside the firearm, but the evidence did not establish possession of the ammunition in the purse.

¶ 21    During its ruling, the court noted that defendant's written statement was "contradictory," but observed:

> "And [defendant] does state that he *** did not know the weapon was there; however, the next line is damaging to the Defendant: 'He left it, and I was only trying to return it safe and sound.' That is very damaging to the Defendant. It shows knowledge, that he knew that weapon was there."

¶ 22    Defendant filed a motion for new trial, which the court denied. Following a sentencing hearing, the court merged count VIII into count VII and imposed three years' imprisonment. Defendant's motion to reconsider sentence was denied.

¶ 23    On appeal, defendant argues that his conviction for UUWF must be reversed because the State failed to prove the *corpus delicti* of the crime where the conviction relied on his uncorroborated statement.

¶ 24    In considering a challenge to the sufficiency of the evidence, this court examines " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) *People v. Davison*, 233 Ill. 2d 30, 43 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact is responsible for weighing the evidence and credibility of witnesses and resolving any inconsistencies in testimony, and the reviewing court will not substitute its judgment on these issues. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224-25 (2009). A criminal conviction will not be overturned "unless the evidence is so unreasonable, improbable or unsatisfactory that it raises a reasonable doubt of defendant's guilt." *People v. Evans*, 209 Ill. 2d 194, 209 (2004).

¶ 25    At trial, the State must prove two propositions beyond a reasonable doubt: (1) the *corpus delicti*, or commission of the crime; and (2) the identity of the defendant. *People v. Lara*, 2012 IL 112370, ¶ 17. The *corpus delicti* cannot be proven solely by a defendant's confession, admission, or out-of-court statement. *Id*. When a defendant's confession is part of the *corpus delicti*, the State must also provide some independent corroborating evidence. *Id.* (citing *People v. Sargent*, 239 Ill. 2d 166, 183 (2010)).

¶ 26    Corroborating evidence need not prove the offense beyond a reasonable doubt, but rather, "need only *tend to show* the commission of the crime." (Emphasis in original.) *Id*. ¶ 18. The State need not show independent proof of all elements, or even a particular element, of the crime. *Id*. ¶ 39. Evidence is sufficient to establish the *corpus delicti* if it tends to connect the defendant with the crime. *Id*. ¶ 44. An "inferential connection" between the evidence and the defendant's confession may satisfy the *corpus delicti* rule. *Id*. ¶ 33 (citing *People v. Bounds*, 171 Ill. 2d 1, 44 (1995)). If the defendant's confession involves an element of the charged offense, the independent evidence need not verify those circumstances; rather, the evidence must correspond to the

circumstances. *Id.* ¶ 45 (citing *People v. Willingham*, 89 Ill. 2d 352, 359 (1982)). In sum, "corroboration is sufficient to satisfy the *corpus delicti* rule if the evidence, or reasonable inferences based on it, tends to support the commission of a crime that is at least closely related to the charged offense." *Id.*

¶ 27    To prove UUWF as charged in count VII, the State was required to show that defendant possessed a firearm on or about his person and had been convicted of a felony. See 720 ILCS 5/24-1.1(a) (West 2018).

¶ 28    Possession of contraband may be actual or constructive. *People v. Givens*, 237 Ill. 2d 311, 335 (2010); see also *People v. Wise*, 2021 IL 125392, ¶ 24 ("Under section 24-1.1(a), a felon is also prohibited from knowingly possessing a firearm 'about' his person; that is, he cannot have constructive possession of it.") To establish constructive possession of a firearm, the State must prove that the defendant (1) knew the firearm was present and (2) exercised immediate and exclusive control over the area in which the weapon was found. *People v. McCurine*, 2019 IL App (1st) 160817, ¶ 22. Constructive possession may be proved through circumstantial evidence. *People v. Wright*, 2013 IL App (1st) 111803, ¶ 25.

¶ 29    Viewing the evidence in the light most favorable to the State, a rational trier of fact could find defendant constructively possessed the firearm. At trial, evidence established that Kazupski stopped defendant for speeding and detained him when he was unable to produce a driver's license. Troopers searched defendant's vehicle twice, discovering ammunition in a purse on the front passenger floorboard and a loaded firearm under a child seat in the back seat of the vehicle, within an arm or two's reach from defendant. Defendant was arrested and taken to a police station, where he wrote and signed a statement which stated, in part, that he told an officer that "I didnt know the

gun was left in the car and that my brother who's gun it was, was in the car when I cut his hair earlier. He left it and I was only trying to return it safe and sound." The trial court found defendant's comment in the written statement that " 'He left it, and I was only trying to return it safe and sound' " to be "damaging" and that "[i]t shows knowledge, that he knew that weapon was there."

¶ 30    When the officers discovered the firearm and ammunition, defendant had exclusive control of the vehicle as its sole occupant and driver and was within arm's reach of the loaded firearm. This, coupled with defendant's statement that Mike "left" the firearm and "I was only trying to return it safe and sound," demonstrates that defendant was in constructive possession of the firearm. See *McCurine*, 2019 IL App (1st) 160817, ¶ 23 ("Control over the area where the contraband was found gives rise to an inference that the defendant possessed the contraband." (quoting *People v. Faulkner*, 2017 IL App (1st) 132884, ¶ 39)).

¶ 31    Nevertheless, defendant argues that that the *corpus delicti* has not been established because mere presence in a vehicle containing contraband is insufficient to support an inference of knowledge. See, *e.g.*, *People v. Hampton*, 358 Ill. App. 3d 1029, 1032-33 (2005). Defendant argues that the State never established the factors typically used to show constructive possession of contraband in a vehicle. According to defendant, officers did not observe defendant make any furtive movements, the vehicle was registered to defendant's girlfriend and no evidence showed that he drove the vehicle regularly, the firearm was not visible or easily accessible, and it was only discovered during a second search of the vehicle.

¶ 32    The State, however, need not show independent proof of all elements, or even a particular element, of the crime. *Lara*, 2012 IL 112370, ¶ 39. If defendant's confession involves an element of the charged offense, the independent evidence need not verify those circumstances; rather the

evidence must correspond to the circumstances. *Id.* ¶ 45. The State established that defendant had exclusive control of the vehicle when the firearm and ammunition were discovered. This fact, taken with his statement, tends to show that defendant was in possession of a firearm to the extent required to establish the *corpus delicti* of the offense. *Id*.

¶ 33    For the aforementioned reasons, we affirm the judgment of the circuit court.

¶ 34    Affirmed.