2023 IL App (1st) 220570-U

No. 1-22-0570

Order filed June 28, 2023

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 10809 (01) |
| | ) | |
| CORTEZ BYRD, | ) | Honorable |
| | ) | Timothy J. Joyce, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE REYES delivered the judgment of the court.
Presiding Justice McBride and Justice Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm defendant's conviction for unlawful use or possession of a weapon by a felon over his contention that the State failed to prove him guilty beyond a reasonable doubt.

¶ 2    Following a bench trial, defendant Cortez Byrd was found guilty of multiple unlawful use or possession of a weapon by a felon (UUWF) offenses, violation of the Firearm Owners Identification Card Act (FOID Act), and possession of cannabis with intent to deliver. The court merged the counts into one count of UUWF (720 ILCS 5/24-1.1(a) (West 2018)) and sentenced

defendant to seven years' imprisonment. On appeal, defendant argues that the State failed to prove beyond a reasonable doubt that he had constructive possession of a firearm discovered by officers under the floorboards of a residence because the State did not establish that he knew about the weapon or lived in the residence. We affirm.

¶ 3    During the execution of a search warrant, police recovered firearms, ammunition, and cannabis from a home where defendant and his brother, Corey Byrd, were present.[1] Premised on the items police recovered from the second floor attic of the residence, defendant was charged with nine counts of UUWF predicated on his possession of five different firearms and four types of ammunition, one count of possession of a stolen firearm, one count of violation of the FOID Act, and one count of possession of cannabis with intent to deliver. Corey was charged with offenses arising from the items police recovered from the basement of the residence. Defendant and Corey were tried in a joint bench trial.

¶ 4    Chicago police officer Cesar Guerrero testified that around 7:30 a.m. on June 27, 2018, he helped execute a search warrant on a single-family residence on the 8700 block of South Ada Street in Chicago (Ada residence). Guerrero entered the home and went directly to the basement, where he saw Corey with a woman and detained them. In the basement, Guerrero recovered a black nylon rifle case containing an AR-15 assault rifle, an empty magazine and another that contained live ammunition, and a tripod attachment for the rifle. Another officer, Officer Hardy, recovered multiple boxes of .223-caliber rifle rounds in the basement.

---

[1] As Corey Byrd shares the same last name as defendant, we will refer to Corey by his first name. Corey is not a party to this appeal.

¶ 5     On cross-examination, Guerrero stated that the residence had a basement, a first floor, and an attic.[2] Guerrero did not see defendant or Corey engaged in narcotics activity. The case for the assault rifle had no indicia of ownership and was found inside a wall in a storage room. Guerrero did not know when it was placed there or by whom. Hardy found the boxes of ammunition on a shelf in the same storage room. The ammunition also lacked identifying information, and Guerrero did not see who placed it there. Guerrero did not recover proof of residency for defendant or Corey from the basement. None of the items recovered from the basement yielded fingerprints.

¶ 6     On examination by the court, Guerrero testified that the officers recovered 38 boxes of rifle rounds each containing 20 bullets. The ammunition fit the rifle recovered in the basement.

¶ 7     Chicago police officer Francisco Gonzalez testified that he recovered a loaded blue steel semiautomatic handgun from a nightstand next to the bed in a first-floor bedroom of the residence.

¶ 8     On cross-examination, Gonzalez stated that a man opened the door to the residence when the officers arrived. Gonzalez did not see defendant or Corey entering or exiting the bedroom. Gonzalez did not know who placed the firearm on the nightstand, and the firearm did not have any indicia of ownership or fingerprints. Gonzalez did not recover any items with defendant's or Corey's names from the bedroom.

¶ 9     Chicago police detective Daniel Fava testified that he searched the upstairs of the residence while executing the search warrant. The second floor had a common area with a bedsheet or curtain in front of a connected bedroom. A second bedroom was connected to the first bedroom, and only accessible through it. A third room, situated at the front of the second floor but only accessible through the second bedroom, resembled a "very small" closet. During Fava's testimony, he

---

[2] Throughout the report of proceedings, the attic is also referred to as the second floor.

discussed several photographs of the residence that were published, included in the record on appeal, and reviewed by this court.

¶ 10   Fava observed defendant, whom he identified in court, walking from the second upstairs bedroom. After defendant was detained, Fava cleared the rest of the upstairs; no one else was present. In the "front area," situated past the second bedroom, Fava observed a "false compartment" in the floor. A photograph of the front area depicts a room with green carpeting and a wooden box on the floor.

¶ 11   In the first bedroom, Fava observed a small, knotted bag containing pills, later determined to be Oxycodone, and cannabis in plain view on a nightstand. In the closet of the first bedroom, Fava peeled back the carpet and discovered another false compartment with knotted bags of cannabis. Also in the first bedroom, Fava discovered a third hidden compartment underneath a loose floorboard; it held two Glock semiautomatic pistols with extended magazines and more cannabis. One pistol contained 9-millimeter rounds. The other pistol, which contained .45-caliber rounds, had its serial number defaced. Fava also discovered "a significant amount of ammunition" in boxes and magazines in the same compartment. Photographs depict the first bedroom and closet, each with a rectangular hole cut in the floor with a wooden "lid," and the contents of the compartments. The photograph of the wooden compartment in the closet shows several knotted bags inside. The photograph of the wooden compartment in the bedroom shows a firearm, clear plastic bag containing a green substance, and a blue tote bag inside. A closeup photograph of the blue tote bag shows that it contains another firearm and multiple boxes of ammunition.

¶ 12   In the second bedroom, beneath the carpet under a TV stand, Fava observed a fourth hidden compartment with three more loaded firearms and ammunition. Photographs depict the second

bedroom with a bed, TV stand, and rectangular wooden compartment in the floor underneath the TV stand. The compartment contained three firearms, firearm magazines, and two plastic bags containing multiple boxes of ammunition.

¶ 13    Fava further testified that another officer recovered a "gun offender hard card registration" form for defendant in the front room. Fava identified photographs of the document, which are included in the record on appeal and have been viewed by this court. The form, titled "Gun Offender Registration Notification," contains defendant's name and date of birth, lists his address as the Ada residence, and is dated December 18, 2017. The Criminal Registrants Notification of Requirements discovered with the registration notification is dated December 26, 2017, and lists defendant's name, date of birth, and signature, but states that defendant was not registered because he had "no proof of residency," A third document, titled Witness Information Form-Preliminary Parole Revocation Hearing, lists defendant's name and Illinois Department of Corrections (IDOC) number, and is dated December 18, 2017.

¶ 14    On cross-examination, Fava stated that, during the search, other people were in the residence besides defendant and Corey, but he did not recall how many were present. Fava first saw defendant emerge from behind a curtain across the door leading into the second bedroom from the first bedroom. Fava did not see defendant attempt to conceal or discard anything. No contraband was recovered from defendant's person. The recovered contraband, including firearms, ammunition, and drugs, had no identifiers of ownership or proof of residency.

¶ 15    Chicago police officer Xavier Chism testified that defendant was arrested and Mirandized. Defendant subsequently stated "[t]hat all of the guns weren't his." On cross-examination, Chism

stated that he authored the arrest report, and agreed that it stated defendant was Mirandized, but he did not write that defendant said that "all of the guns weren't his."

¶ 16    On redirect examination, Chism testified that the arrest report was a preliminary report, and the case report, generated afterward, is more detailed. According to Chism, the case report describes his conversation with defendant and his statement about the weapons. On recross examination, Chism agreed that he did not recall defendant "making admissions to whether [he] owned the weapons or not."

¶ 17    The State introduced a stipulation that defendant did not have a valid Firearm Owner's Identification (FOID) card and was not eligible for one. At the time of the search, defendant had a prior conviction for aggravated unlawful use of a weapon (AUUW). The recovered firearms were not submitted for fingerprint analysis. The State also introduced a stipulation that forensic scientist Adrienne Hirsch would testify that she analyzed three items inventoried in the case and determined they tested positive for 201, 448.5, and 14.8 grams of cannabis.

¶ 18    The court granted defense counsel's motion for a directed finding regarding defendant's charge for possession of a stolen firearm.

¶ 19    In closing, defense counsel argued that the State did not establish that defendant had exclusive control over the contraband recovered from the second floor, since none of the items had identifying information and the only alleged proof of his residency was over six months old. Further, defense counsel asserted that defendant's statement about "all the guns" constituted a denial and not an admission.

¶ 20    The court found defendant guilty of all UUWF counts, violation of the FOID Act, and possession of cannabis with intent to deliver. In ruling, the court noted that the officers were

credible regarding the discovery of the items and the statement defendant made after he was Mirandized, which the court characterized as "at least all the guns weren't mine." The court found that this statement, together with the numerous firearms and the "gun offender notification card" discovered on the second floor, where defendant was found alone, established his knowledge and control over the items. The court commented that while the document was dated six months before the date of the search, the judge's own driver's license had been issued several years previously and was still proof of residency. Considering that defendant was observed exiting a bedroom near the location of firearms and proof of residency, the court rejected defense counsel's position that defendant's statement that "all the guns aren't mine" was "essentially not an admission that any of those guns are mine." Rather, the court construed defendant's statement as "claiming he does not own all those guns." The court noted, moreover, that "ownership is not synonymous with possession," which, instead, "relates to knowledge and control." The court similarly found that defendant had knowledge and control over the cannabis discovered with the firearms.

¶ 21    Defendant filed a motion for a new trial, arguing that the State failed to prove him guilty beyond a reasonable doubt. At a hearing, defense counsel argued that officers observed defendant emerge from an upstairs "back room," but one of the three upstairs rooms had no contraband. Further, the State did not present defendant's current proof of residency. The court denied the motion, commenting that it interpreted defendant's statement that "[n]ot all those guns are mine" as "some one or some number of guns are mine although not all of them are mine."

¶ 22    After a hearing, the court imposed seven years' imprisonment on the UUWF count predicated on knowingly possessing a 9-millimeter handgun after having been convicted of

AUUW.[3] Defendant did not file a motion to reconsider sentence. He timely appealed.

¶ 23    On appeal, defendant argues that the State failed to prove that he constructively possessed a firearm, because it did not establish that he resided at the Ada residence or knew that a firearm had been hidden beneath the floorboards.

¶ 24    The standard of review for a challenge to the sufficiency of the evidence is "whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. " (Internal quotation marks omitted.) *People v. Belknap*, 2014 IL 117094, ¶ 67. The trier of fact resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic facts to ultimate facts. *People v. Brown*, 2013 IL 114196, ¶ 48. Accordingly, this court will not substitute its judgment for that of the trier of fact on the weight of the evidence or credibility of witnesses. *Id.*

¶ 25    In weighing the evidence "the trier of fact is not required to disregard inferences which flow normally from the evidence before it, nor need it search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." (Internal quotation marks omitted.) *People v. Hardman*, 2017 IL 121453, ¶ 37. A reviewing court must allow all reasonable inferences from the record in favor of the prosecution (*People v. Cunningham*, 212 Ill. 2d 274, 280 (2004)) and will not reverse a conviction unless the evidence is "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt" (*People v. Jackson*, 232 Ill. 2d 246, 281 (2009) (internal quotation marks omitted)).

---

[3] The trial court did not address the merger of counts at the sentencing hearing, but the mittimus includes a notation stating, "ALL OTHER COUNTS MERGE." Similarly, the court's "order entered" disposition sheet includes a notation stating, "All other cts to merge."

¶ 26     To sustain defendant's conviction for UUWF as charged, the State had to prove beyond a reasonable doubt that he possessed a firearm after having been convicted of a felony. 720 ILCS 5/24-1.1(a) (West 2018). Defendant only contests whether the State proved he possessed a firearm.

¶ 27     Possession of contraband may be actual or constructive. *People v. McCurine*, 2019 IL App (1st) 160817, ¶ 21. Actual possession is proved where the evidence shows the defendant "exercised some form of dominion" over the item, "such as trying to conceal it or throwing it away." *People v. Love*, 404 Ill. App. 3d 784, 788 (2010). Where, as here, there is no actual possession, the State may establish constructive possession where the defendant (1) had knowledge of the presence of the contraband and (2) exercised immediate and exclusive control over the area where it was found. *McCurine*, 2019 IL App (1st) 160817, ¶ 22. "Because possession is often difficult to prove directly, proving possession frequently rests upon circumstantial evidence." *Love*, 404 Ill. App. 3d at 788.

¶ 28     "Knowledge may be shown by evidence of a defendant's acts, declarations, or conduct from which it can be inferred that he knew the contraband existed in the place where it was found." *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17. Habitation in the premises where the contraband was discovered is sufficient evidence of control to establish constructive possession. *People v. Cunningham*, 309 Ill. App. 3d 824, 828 (1999). "Where there is no evidence that the defendant controls the premises, proof of mere presence, even combined with [the] defendant's knowledge of the presence of [contraband], will not support a finding of constructive possession unless there is other circumstantial evidence of defendant's control over the contraband." *People v. Tates*, 2016 IL App (1st) 140619, ¶ 20. Constructive possession is not diminished by other individuals' access to the contraband. *People v. Givens*, 237 Ill. 2d 311, 338 (2010). When the

relationship of other individuals to the contraband is sufficiently close to constitute possession, possession over the contraband may be joint. *People v. Ingram*, 389 Ill. App. 3d 897, 901 (2009).

¶ 29    Viewing the evidence in the light most favorable to the State, and allowing all reasonable inferences in favor of the State, a rational trier of fact could find beyond a reasonable doubt that defendant constructively possessed a firearm. Officers discovered five firearms, including a 9-millimeter Glock pistol, hidden on the second floor of the Ada residence, where defendant was present and alone. Further, defendant's "Gun Offender Registration Notification" form, which listed his address as the location of the search, was discovered in the same general area. Lastly, defendant told Chism "[t]hat all of the guns weren't his." This evidence, taken together, was sufficient to establish that defendant constructively possessed a firearm. See *McCurine*, 2019 IL App (1st) 160817, ¶ 22.

¶ 30    Defendant nevertheless contends that the State did not establish that he exercised immediate and exclusive control over the area where the firearms were discovered. Defendant argues that the officers thoroughly searched the entire house, and only discovered one item with defendant's name and the address for the residence "left like trash somewhere in a small attic room" that did not have firearms hidden in it. He points out that the State did not present any evidence that the residence contained any identification for or photographs of defendant or keys belonging to him, and that at least three other individuals were present in the residence. Defendant also contends that the firearms were hidden, and the court misinterpreted his statement to police, and so the State did not establish that he had knowledge of the firearms.

¶ 31    We disagree. First, the totality of the circumstances establish that defendant had knowledge of the firearms where they had been concealed. Defendant informed Chism "[t]hat all of the guns

weren't his." The court found Chism's testimony credible and made the reasonable inference that defendant meant that at least some of the firearms were his. Defendant contends that he intended to tell Chism that the recovered firearms did not belong to him and, therefore, the court misconstrued the statement. We find the court's interpretation of the statement to be a reasonable inference from the evidence and will not seek out alternative explanations consistent with defendant's innocence. See *Hardman*, 2017 IL 121453, ¶ 37. As defendant expressed knowledge of the firearms which had been hidden throughout the second floor of the residence, this element of constructive possession is satisfied. See *Spencer*, 2012 IL App (1st) 102094, ¶ 17.

¶ 32    Additionally, the State presented sufficient evidence that defendant had control over the firearms. During the search of the Ada residence, an officer discovered defendant's "gun offender hard card registration" form in the same general area as where the firearms were discovered and defendant was discovered alone, at 7:30 in the morning, emerging from a bedroom. The form lists his address as the Ada residence.

¶ 33    Defendant contends that the document does not establish his residency, and therefore control, because it was six months old and had been "discarded like trash" where the officers discovered it. See *People v. Ray*, 232 Ill. App. 3d 459, 462-63 (1992) (finding that a six-month-old cable television bill was not sufficient evidence to link the defendants to the residence to establish the control element of constructive possession). However, even accepting defendant's contention that the form alone is insufficient proof of residence, the State established that defendant intended to control at least some of the firearms, as he informed the officers that all the firearms were not his. As explained, the court's interpretation of this statement to mean that some of the recovered firearms "were his," is reasonable. All of the firearms discovered upstairs had

been hidden in secret compartments. It is a reasonable inference that defendant hid, or was complicit in hiding, at least some of them. See *People v. McLaurin*, 331 Ill. App. 3d 498, 501 (2002) (hiding items of contraband "to avoid detection indicates an intent to exercise control over them."). As the State presented sufficient evidence showing defendant's knowledge and control over the firearms, the evidence was not "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt." (Internal quotation marks omitted.) *Jackson*, 232 Ill. 2d at 281.

¶ 34    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 35    Affirmed.